*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Joseph R. DOCKERY III, Master Sergeant**
United States Air Force, Appellant

**No. 16-0296**
Crim. App. No. 38624

Argued October 25, 2016—Decided February 14, 2017

Military Judges: William Muldoon and Gregory Friedland

For Appellant: *Major Lauren A. Shure* (argued); *Colonel Jeffrey G. Palomino.*

For Appellee: *Major Mary Ellen Payne* (argued); *Colonel Katherine E. Oler* and *Gerald R. Bruce*, Esq. (on brief).

Chief Judge ERDMANN delivered the opinion of the court, in which Judges STUCKY and RYAN joined. Judge SPARKS filed a separate concurring opinion in which Judge OHLSON joined.

———————

Chief Judge ERDMANN delivered the opinion of the court.

Contrary to his pleas, a general court-martial panel composed of officer and enlisted members convicted Master Sergeant Joseph R. Dockery III of sexual assault and adultery, in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2012). The panel sentenced Dockery to one year of confinement and a reduction to E-4. The convening authority approved the sentence as adjudged and the United States Air Force Court of Criminal Appeals (AFCCA) affirmed the findings and sentence.

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a court-martial panel member shall be excused for cause whenever it appears that the member "[s]hould not sit as member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." We granted review in this case to determine whether the military judge erred when he removed a

challenged member on the basis of implied bias and, if the removal was in error, whether a prejudice analysis was appropriate.[1] We hold that the military judge erred in his determination that implied bias existed in regard to the challenged member. We further hold that a prejudice analysis is required in this situation and that Dockery was not prejudiced by the error. Therefore, we reverse the decision of the AFCCA to the extent that it affirmed the military judge's determination of implied bias, but uphold the lower court's holding that Dockery suffered no material prejudice due to the error.

## Background

The underlying facts which form the basis of the charges in this case are not at issue in this appeal. The case before us arises out of the military judge's sua sponte removal of a panel member on the basis of implied bias.

Prior to voir dire, the military judge was informed that one of the panel members, Senior Master Sergeant (SMSgt) DC, was listed as a witness on the defense's witness list. When questioned by the military judge as to his knowledge of the case, SMSgt DC responded that he had an intimate knowledge of the case and the facts surrounding it. When asked if he believed it would be appropriate for him to sit on the panel, SMSgt DC answered, "No, sir, I do not." SMSgt DC confirmed that he had not discussed any details of the case with any other members.

---

[1] We granted review of the following issues:

> I. Whether the military judge erred by granting, over the defense objection, the government's challenge for cause against MSgt LW.

> II. Whether the Air Force Court of Criminal Appeals erred by finding that the military judge did not err, and by concluding that even if the military judge did err there was no prejudice, contrary to this court's precedent in *United States v. Peters*, 74 M.J. 31 (C.A.A.F. 2015), *United States v. Woods*, 74 M.J. 238 (C.A.A.F. 2015), *United States v. Nash*, 71 M.J. 83 (C.A.A.F. 2012), *United States v. Clay*, 64 M.J. 274 (C.A.A.F. 2007), and *United States v. Dale*, 42 M.J. 384 (C.A.A.F. 1995).

Both the defense and trial counsel agreed that SMSgt DC, who was African American, should be excused for actual bias and he was subsequently released by the military judge. When reading the composition of the court in the presence of the members, trial counsel noted that SMSgt DC had been excused by the military judge.

During individual voir dire, the trial counsel asked Master Sergeant (MSgt) LW if she had had any sexual assault training. She stated that, as a junior enlisted airman, she had volunteered at a rape crisis center, which entailed her sitting with women in medical facilities as they awaited and underwent medical examination for sexual assault. The trial counsel then asked about her positive response during group voir dire to the defense counsel's question concerning intoxication and whether slurred speech meant an individual could not consent to sex. He was able to get MSgt LW to agree that she would not automatically base her decision on slurred speech, but would consider all the facts about the individual's condition and the military judge's instructions on consent.

Later, during the individual voir dire of MSgt LW, the following colloquy occurred:

> [DC:] Okay. I'm going to go into some questions that I didn't ask when all you guys were on the panel, and we think the evidence in this case is going to show that Master Sergeant Dockery had sexual intercourse with Ms. [AR]. Master Sergeant Dockery, as you can see, is black, and you'll see that Ms. [AR] is white. Do you have any strong opinions on interracial relationships or interracial sex, anything like that?
>
> [MSgt LW:] I certainly don't. I'm Hispanic myself, black and Hispanic. So to me that has absolutely nothing to do with anything.
>
> . . . .
>
> [DC:] Okay. The last question I have for you is, knowing we're dealing with a sexual assault, which is obviously a very important topic, and Master Sergeant Dockery's career and future are—you know—hanging on this, knowing those facts, if you were in his shoes right now, would you want someone like you on this jury?
>
> [MSgt LW:] I would think yes, be fair, not from nothing, but for some reason an African American

person already got dismissed, so really I would think—not that it wouldn't be—oh god—I would say yes. You would want—you would want somebody like me to be fair for both parties, to judge. I will think that I will be fair, listening to all the facts, either way.

. . . .

[DC:] [A]ny other things in terms of you thinking you'd be a good fit for the panel, you would want somebody like you if you were in that position? Anything else beyond what you've already said?

[MSgt LW:] If I was in a position of—

[DC:] Yeah, if—would you want somebody like you on a jury if you were in that position? You discussed your ability to be fair. I was just curious if there was anything else.

[MSgt LW:] No, sir. I think I'll be fair.

[DC:] Okay, all right, thank you so much.

[MSgt LW:] No problem.

[MJ:] Trial Counsel, any follow up questions?

[TC:] Briefly, Your Honor. [MSgt LW], I just wanted to clarify one thing that you just said. You made a comment, I believe—maybe I heard it incorrectly—you made a comment when he asked you about whether or not you could be fair, you made a comment about one person had already gotten dismissed, or one African American already got dismissed. Is that what you stated?

[MSgt LW:] Yes, sir.

[TC:] What were you—what was your point, or what—are you concerned that he was dismissed and that he's African American?

[MSgt LW:] No, sir, no. Just if—well, I don't know—I'm assuming there's supposed to be 12 individuals, and I was just wondering if—you know—if he was going to be replaced.

. . . .

[TC:] Sir, would you mind instructing her on that?

[MJ:] Sure, I can do that. So, for military courts, there's no requirement to have 12 folks. The minimum requirement is five. Okay? So it's different than what you see on TV, and what you see in the movies on Netflix or Hulu. So for any

4

number of reasons, me, as the military judge can excuse court members for a number of reasons. And there was an issue that was brought up to me, I made a judgment call as the military judge, sort of like an official on a football—called an official time out and I said, "You know what? This person is not going to sit on the panel as a juror."

[MSgt LW:] Okay, sir.

[MJ:] You are not to speculate as to why I excused that person from the panel. Don't try to infer any particular reason why that person was excused from the panel. It's just because my job is to make sure this trial is conducted in a fair, orderly, and impartial manner, and so that's what I did.

So, with that information coming from me as the military judge, does that affect any comments or thoughts you have about your ability to sit on this panel as a court member?

[MSgt LW:] No, sir.

[MJ:] Okay. You think you can be fair to both sides?

[MSgt LW:] Yes, definitely, sir.

After the individual voir dire of all of the members, the government moved to strike MSgt LW for "actual bias against the prosecution, or the government." Defense counsel objected. The military judge asked each side for their positions in regard to this challenge:

> [TC:] Yes, sir. It was the comment she made about that seemed like she didn't really intend for it to slip out, but she seemed to believe that—she expressed basically the fact that she kind of felt like she needed to protect the accused, or kind of battle for him because we'd already excused one black member. It seemed to indicate that she had a bias in his favor along racial lines. Not—no malicious intent there, but it seemed to express a bias and a belief that there might be some sort of conspiracy on the part of the government to get rid of minority members on the panel.
>
> So the government can't be comfortable that she is not biased in favor of the accused and against us because of that statement, despite the fact that obviously I know you clarified and gave her a lot more background about that challenge—or that excusal I guess I should say. Still, the fact that that's what she expressed, and then she seemed to

want to backtrack from that when she realized what she said.

That's our basis for challenging her for actual bias.

[MJ:] All right. Defense Counsel, what's your position?

[DC:] Your Honor, the—once you're able to flesh it out, it seemed her confusion in the statement was rising from they were dealing with 11 and she had it in her mind that, like a civilian jury, there had to be 12. Once you clarified that—you know—12 wasn't the fixed number and that wasn't a problem, she seemed immediately to get it. You asked if she had any issue in terms of fairness, all of that, she said she definitely was going to be fair. Did not indicate anything firm in terms of racial bias or anything like that. I think this was simply her just being confused in terms of military justice procedure and what it meant when [SMSgt DC] was excused from the panel. There was [sic] no explicit statements about protecting him on racial lines or other lines. It completely was a matter of straight confusion, which the court, when they voir dire'd [sic] her, sufficiently resolved.

[MJ:] Okay. Thanks. All right, I've considered her responses. While I don't find an actual bias, on the part—I think that was cleared up by my instructions to her, I do find that there is implied bias on the part of [MSgt LW] from her utterance without any precipitating factors there, and so given that I find implied bias, the challenge against [MSgt LW] is granted. So she will be excused.

At his court-martial, Dockery was found guilty of one specification of sexual assault and one specification adultery. On appeal to the AFCCA, Dockery alleged six assignments of error, which included the military judge's grant of the challenge for cause of MSgt LW. *United States v. Dockery*, No. ACM 38624, 2015 CCA LEXIS 540, at *1, *5, 2015 WL 9594508, at *1-2 (A.F. Ct. Crim. App. Dec. 2, 2015) (unpublished).

The AFCCA found that the military judge did not err in excusing MSgt LW for implied bias because she raised the issue of race in her "unsolicited response" to a voir dire question. 2015 CCA LEXIS 540, at *12, 2015 WL 9594508, at *5. The lower court concluded that MSgt LW's response demonstrated a racial bias that would cause a reasonable

member of the public to question the fairness of the trial were MSgt LW to sit as a member. 2015 CCA LEXIS 540, at *13, 2015 WL 9594508, at *5. The AFCCA went on to find that, even assuming that the excusal of MSgt LW was in error, it was harmless beyond a reasonable doubt. 2015 CCA LEXIS 540, at *14, 2015 WL 9594508, at *5. As Dockery had made no complaint as to the qualifications of the members that did sit on his panel and because there was no reason to believe a different "mix" of members would have yielded a more favorable result, the lower court held that Dockery did not suffer any material prejudice. 2015 CCA LEXIS 540, at *15-16, 2015 WL 9594508, at *6 (citing *United States v. Newson*, 29 M.J. 17, 21 (C.M.A. 1989)).

## Issue I

The first issue is whether the military judge erred in granting the challenge of MSgt LW on implied bias grounds.

Dockery argues that the military judge erred in granting the government's challenge because it was based upon a misinterpretation of MSgt LW's statements. He argues that this is evidenced by MSgt LW's statements that she would be fair to both parties and that her other statements were far from demonstrating any racial bias. Dockery asserts that MSgt LW's answer regarding her race was an appropriate response to the question "would you want somebody *like you* on this jury?" (Emphasis added.) Dockery argues MSgt LW reasonably could have interpreted this question as including a reference to her race. Finally, he argues that, since the only other African American member of the panel had been excused, it was reasonable for MSgt LW to believe a racially diverse panel was desirable.

The government responds by asserting that the military judge did not plainly err in his implied bias analysis. According to the government, MSgt LW's "unprompted expression of concern" about the excusal of SMSgt DC led to the reasonable inference that she would be biased in favor of Dockery. Further, the government argues that if MSgt LW had remained on the panel, there would have been too great of a risk that a member of the public would have questioned the fairness of the court-martial.[2]

---

[2] Both parties discussed the application of *Batson v. Kentucky*, to this case. 476 U.S. 79 (1986) (holding that a criminal defendant's rights under the Equal Protection Clause are violated if the

**Discussion**

This court reviews implied bias challenges pursuant to a standard that is "less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Peters*, 74 M.J. 31, 33 (C.A.A.F. 2015) (citations omitted) (internal quotation marks omitted). An abuse of discretion has occurred "if the military judge's findings of fact are clearly erroneous or if the decision is influenced by an erroneous view of the law." *United States v. Quintanilla*, 63 M.J. 29, 35 (C.A.A.F. 2006) (citation omitted).

A "military judge's ruling on a challenge for cause is given great deference." *United States v. Rolle*, 53 M.J. 187, 191 (C.A.A.F. 2000) (citation omitted) (internal quotation marks omitted). Although it is not required for a military judge to place his or her implied bias analysis on the record, doing so is highly favored and warrants increased deference from appellate courts. *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007) (recognizing the "vantage point of a military judge observing members in person and asking the critical questions that might fill any implied bias gaps left by counsel."). We have noted that although "[w]e do not expect record dissertations" from the military judge's decision on implied bias, we do require "a clear signal that the military judge applied the right law." *Id.* (citation omitted) (internal quotation marks omitted). However, a mere "[i]ncantation of the legal test [for implied bias] without analysis is rarely sufficient in a close case." *Peters*, 74 M.J. at 34. "In cases where less deference is accorded, the analysis logically moves more towards a de novo standard of review." *United States v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016).

R.C.M. 912(f)(1)(N) applies to both implied and actual bias.[3] *United States v. Daulton*, 45 M.J. 212, 216-17

---

government uses a preemptory challenge to strike jurors on account of their race). However, the federal circuits have not applied *Batson* to challenges for cause, which was the basis for the challenge in this case. *See, e.g., United States v. Elliott*, 89 F.3d 1360, 1364-65 (8th Cir. 1996) ("We know of no case that has extrapolated the *Batson* framework to for-cause strikes.").

[3] While the government initially challenged MSgt LW for actual bias, the military judge denied the challenge, finding that his instructions to MSgt LW remedied any actual bias that may have been present. As neither party disputes that portion of the

(C.A.A.F. 1996). Implied bias challenges stem from the "historic concerns about the real and perceived potential for command influence" in courts-martial. *Clay*, 64 M.J. at 276-77. "Implied bias exists when most people in the same position as the court member would be prejudiced." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008). It is evaluated objectively under the totality of the circumstances and "'through the eyes of the public,' reviewing 'the perception or appearance of fairness of the military justice system.'" *Id.* (quoting *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008)). "The core of that objective test is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel." *Peters*, 74 M.J. at 34.

After denying the government's actual bias challenge, the military judge found that MSgt LW's responses constituted implied bias because her "utterance" was made "without any precipitating factors." The military judge granted the challenge against MSgt LW with no further discussion or explanation. From this record it is impossible for us to determine whether the military judge considered and applied the well-established standards for analyzing an implied bias challenge. We cannot know if the military judge viewed MSgt LW's statements under the totality of the circumstances or whether he even considered the public's perception as to the fairness of the trial were MSgt LW to remain on the panel. As the military judge did not put any analysis on the record, this court need not afford his ruling much deference. *See Clay*, 64 M.J. at 277 (citing *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002)).

The context of MSgt LW's statements shed light on the motivations for her responses. She was asked by defense counsel if she had any "strong opinions on interracial relationships or interracial sex," as Dockery was African American and the victim was Caucasian. MSgt LW indicated she did not hold any strong opinions because she was African American and Hispanic. Almost immediately following this question, defense counsel asked, "[I]f you were in [Dockery's] shoes right now, would you want *somebody like you* on this jury?" (Emphasis added.) MSgt LW

---

military judge's ruling, we need only address the military judge's sua sponte implied bias ruling.

answered that she would want herself on the panel if she were in Dockery's position because she would be fair and "*for some reason an African American person already got dismissed, so . . . you would want somebody like me to be fair for both parties.*" (Emphasis added.)

The highlighted language is the portion of MSgt LW's response that the military judge relied on in finding evidence of an appearance of racial bias.[4] As MSgt LW had just been asked about interracial relationships, the phrase "somebody like you" could reasonably be interpreted as including a reference to her race. Contrary to the military judge's findings, it was not MSgt LW who initially injected race into the voir dire process, but rather it was defense counsel's questions.

When trial counsel later asked MSgt LW if she was concerned that an African American panel member had been excused, she answered that she was not concerned that SMSgt DC was African American, but rather that she thought there were supposed to be twelve members and she was wondering if he would be replaced. The military judge resolved MSgt LW's misunderstanding as to the number of panel members required by providing an appropriate instruction. MSgt LW reiterated she would listen to all of the facts and would judge them fairly. She clearly indicated more than once that she would be fair to both sides.

While the government argued at trial that MSgt LW's response indicated that she "needed to protect" Dockery, or "battle for him," that was not the basis of the military judge's ruling. The only basis in the record for the implied bias ruling is that MSgt LW had brought up the issue of race "without any precipitating factors." However, as previously noted, the record reflects that it was not MSgt LW who initially raised the issue of race in this proceeding but rather the defense counsel.

---

[4] The AFCCA noted that this "initial response may have been motivated solely by [MSgt LW's] interest in racial diversity" but added that "her ambiguous reply to trial counsel's attempt to clarify her position further buttresses a theory supporting the finding of implied bias." 2015 CCA LEXIS 540, at *13-14, 2015 WL 9594508, at *5.

Reviewing the totality of the circumstances, we do not believe that MSgt LW's inclusion on the court-martial panel would have caused the public to perceive unfairness within the military justice system. In this circumstance, a panel member simply making a reference to race does not create either the reality or appearance of racial bias. We consequently hold that the military judge erred when he excused MSgt LW on the basis of implied bias.

### Issue II

We now turn to the second issue in this case, which is whether the AFCCA erred by: (1) upholding the military judge's challenge for cause ruling; and (2) holding that even if the military judge erred, Dockery suffered no material prejudice. 2015 CCA LEXIS 540, at *15-16, 2015 WL 9594508, at *5-6. Because we conclude that the military judge erred when he granted the challenge against MSgt LW on implied bias grounds, we similarly hold that the AFCCA erred when it upheld that determination. Our prejudice analysis, however, is complicated by the procedural posture of this case.[5]

Dockery asserts that the AFCCA incorrectly determined that any implied bias error was harmless beyond a reasonable doubt. He argues that this court has never required an appellant to show prejudice when a military judge improperly grants a challenge for cause under the implied bias standard. He further argues that requiring him to demonstrate actual prejudice is impossible, as there is no actual manifestation of bias when determining implied bias. He therefore contends that he cannot show any actual prejudicial impact, but only "an appearance of impropriety."

The government counters that the AFCCA did not err by testing for prejudice. The government explains that this court's case law as to implied bias, which does not require a showing of actual prejudice, is distinguishable from this case. Specifically, the government asserts that those cases involve the failure to excuse a panel member for cause, rather than the erroneous excusal of a panel member. *See, e.g.*, *Peters*, 74 M.J. at 32; *United States v. Nash*, 71 M.J. 83 (C.A.A.F. 2012); *Clay*, 64 M.J. at 275; *United States v. Dale*, 42 M.J. 384 (C.A.A.F. 1995).

---

[5] We note that both parties agreed that structural error was not present in this case.

## Discussion

Whether a lower court utilized the appropriate standard to test for prejudice is a question of law reviewed de novo. *United States v. Evans*, 75 M.J. 302, 304 (C.A.A.F. 2016).

In a typical case involving actual bias, an appellant appeals the denial of a challenge for cause and argues the challenged member's participation on the panel resulted in material prejudice. *See Peters*, 74 M.J. at 34; *Woods*, 74 M.J. at 243; *United States v. Terry*, 64 M.J. 295, 302-04 (C.A.A.F. 2007). When implied bias is the basis for an appeal of a denied challenge, the appellant similarly argues that the challenged member should have been removed. *See Woods*, 74 M.J. at 243-44. However, instead of arguing prejudice, the appellant asserts that, because the member remained on the panel, a reasonable member of the public would question the fairness of the court-martial. *Id.*

In this case, the military judge sua sponte granted the government's actual bias challenge of MSgt LW on the basis of implied bias, which arose from her alleged racial bias.[6] The unstated implication of the military judge's ruling was that the inclusion of MSgt LW on the panel would cause the public to perceive that the military justice system was unfair. Because Dockery has successfully argued on appeal that the implied bias ruling was in error, the issue before us now concerns whether he must establish that he suffered prejudice as a result of that error.

Dockery contends that the military judge's implied bias ruling was erroneous and has asked us to reverse that ruling. However, asking this court to *reverse* a ruling of implied bias does not place Dockery in the same position as an appellant who has brought a successful implied bias challenge, and therefore does not eliminate the need for Dockery to establish that he was prejudiced from the error. Dockery has not based his request for a reversal on the presence of implied bias. To the contrary, Dockery's appeal is based on just the opposite – that implied bias did not exist.

---

[6] "[W]here actual bias is found, a finding of implied bias would not be unusual, but where there is no finding of actual bias, implied bias must be independently established." *Clay*, 64 M.J. at 277.

Dockery argues that *failing to include* MSgt LW was error – but he does not argue that any member on that panel was impliedly biased. This places Dockery in a much different position than an appellant in a typical implied bias case where the issue is *the inclusion* of an impliedly biased member, which could raise doubt about the fairness of the trial in the public's mind. As the government has noted, there is a difference between the failure to remove a biased member who sat on a panel that tried an accused, and the erroneous removal of an unbiased member from a panel, where there is no challenge to the ultimate makeup of the panel.

The ultimate interest that Dockery seeks to protect is that he received a fair and impartial panel. Both this court and Article III courts have required an appellant to make a showing of prejudice under similar situations. For example, in the capital case of *Quintanilla*, we held that the military judge erroneously granted a government challenge for cause against a panel member. 63 M.J. at 36. In our analysis, we looked to whether the appellant had been prejudiced and ultimately denied relief, noting that there had "been no allegation that any of the members who sat on the panel held a bias against Appellant or otherwise should have been disqualified." 63 M.J. at 37; *see also Rose v. Clark*, 478 U.S. 570, 579 (1986) ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis."); *Newson*, 29 M.J. at 21 (Where qualified members sat for a court-martial, "[t]here is no reason to suspect that a different mix of members would have produced results more favorable to appellant.").

Several federal circuits have similarly held that where a government challenge for cause is improperly granted, and the error is nonconstitutional, the appellant is entitled to relief only if he or she can demonstrate prejudice. *See United States v. Mills*, 987 F.2d 1311, 1314 (8th Cir. 1993) (holding that reversal of cases where jurors are improperly removed for cause is necessary only when the appellant shows actual prejudice); *United States v. Griley*, 814 F.2d 967, 974 (4th Cir. 1987) (finding harmless error where the appellant could not demonstrate that the exclusion of a prospective juror adversely affected him).

13

Dockery has neither alleged that any of the panel members who ultimately tried him were biased nor has he suggested that their presence on the panel created substantial doubt as to the court-martial's "legality, fairness and impartiality." *See* R.C.M. 912(f)(1)(N). We therefore uphold the lower court's determination that the military judge's error was subject to a harmless error analysis. As Dockery has failed to establish any material prejudice, he is not entitled to relief.

## Conclusion

While the United States Air Force Court of Criminal Appeals' determination that the military judge did not err in his implied bias ruling was erroneous, we agree with the lower court that Dockery suffered no prejudice. Therefore the judgment of United States Air Force Court of Criminal Appeals is affirmed.

Judge SPARKS, with whom Judge OHLSON joins, concurring.

I concur with the Court's conclusion that the military judge erred in this case but that the accused was not prejudiced as a result of that error. I write separately to express certain concerns that have little to do with the Chief Judge's well-reasoned opinion, and more to do with the issue of certain appearances that arise in the implied bias context.

Here, the military judge's precise basis for his implied bias determination is unclear because of his failure to put more on the record. However, given the context in which the issue arose and the trial counsel's argument in support of the challenge for cause, it seems the military judge was concerned that it might appear to some that the issue of racial bias in favor of the accused and against the Government had found its way into the proceedings. The military judge was rightfully sensitive to this issue. However, if this was the military judge's reasoning, it may have been an overreaction. There is a distinction to be drawn between the issue of race and the issue of racial bias. Here, the issue of race was present from at least the point during voir dire when the members, after observing that the accused was black, deduced that the victim was white. However, MSgt LW's responses to the questions posed to her from counsel and the military judge do not even remotely suggest that she harbored a racial preference for or bias towards the accused, notwithstanding trial counsel's ardent claims to the contrary.

Although the Government is entitled to a fair opportunity to present its case to unbiased members, the issue of the *appearance* of fairness in a criminal proceeding is generally understood as a reference to the appearance of fairness to the accused. After all, it is the accused's constitutional right to a fair trial that is most often at issue. *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984). Here, the military judge's concern for the appearance of fairness to the prosecution risked raising a more significant appearance issue relevant to the accused. I agree this case is not controlled by *Batson v. Kentucky*, 476 U.S. 79 (1986). That said, when any member of a suspect class (such as a racial or ethnic group) is improperly removed from the court-martial panel, the constitutional concerns underpinning *Batson* are implicated. The question then is whether the military judge's ruling in this case raised the specter that the accused

was tried before a court-martial in which a member of his race was purposefully excluded based on the false *assumption* that the member would be unable to impartially consider the case against an accused of the same race. *Id.* at 85. Because of the trial counsel's over-the-top argument in support of his challenge for cause and our conclusion that the military judge erroneously removed the member, it might well seem to some that the appearance of purposeful exclusion is clearly present in this case. I remain of the view that from a purely objective standpoint, no reasonable person armed with the facts and circumstances of this case and an understanding of the military justice system would conclude that the military judge purposefully excluded the member based on her race. The record does not disclose a racial animus on the part of the military judge, and I am loath to ascribe to him *any* nefarious motive.

My intent here is to offer a word of caution to military judges. Here, the military judge could simply have denied the challenge for cause without more. If the trial counsel truly felt as strongly as his comments on the record suggest, he could have exercised his peremptory challenge. This would have provided the military judge the opportunity to develop the record with the appropriate inquiry required under *Batson* and erased the ambiguity we are left with in this case.

Finally, it remains unclear under our case law when, if ever, an appearance of purposeful exclusion of a member by the military judge might warrant relief, as long as the accused has been tried by an impartial panel. I conclude that an appearance of purposeful exclusion does not exist in this case. However, it does raise important questions about what, if any, remedy would be available in a more flagrant situation in which relief might well be warranted.