# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL,[1] BROOKHART, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class ADAM T. LEATHORN**
**United States Army, Appellant**

ARMY 20190037

Headquarters, Fort Bragg
Christopher E. Martin, Military Judge
Charles C. Poché, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Kyle C. Sprague, JA; Captain James J. Berreth, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Jonathan S. Reiner, JA; Captain Allison L. Rowley, JA (on brief).

11 December 2020

-------------------------------------
MEMORANDUM OPINION
-------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Senior Judge:

Sometimes what's left unsaid says it all.

During group voir dire in appellant's sexual assault trial, the military judge asked all prospective panel members, "Has anyone or any member of your family or anyone close to you personally ever been the victim of an offense similar to any of those charged in this case; again, conspiracy, sexual assault, and obstruction of

---

[1] Chief Judge (IMA) Krimbill participated in this case while on active duty.

justice?" First Sergeant (1SG) MS[2] replied in the negative, a response that was absolutely false. Notwithstanding 1SG MS's apparent lack of candor, the assistant trial counsel (ATC) made the court aware of the fact that 1SG MS's minor daughter had been the victim of a sexual assault, a fact clearly indicated on 1SG MS's panel member "questionnaire." Defense counsel used that fact, as well as 1SG MS's initial non-disclosure, as a basis to challenge her for cause. The government opposed the challenge and the military judge ultimately denied it.

On appeal, appellant argues that the military judge's denial of this causal challenge constitutes reversible error. We agree and provide relief in our decretal paragraph, obviating the need to address appellant's remaining assignments of error and the matters personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A 1982).

## I. BACKGROUND

An enlisted panel convicted appellant, contrary to his pleas, of two specifications of conspiracy (i.e., conspiracy to sexually assault Private First Class[3] (PFC) HS and conspiracy to obstruct justice by impeding the investigation into the sexual assault), one specification of sexually assaulting PFC HS, and one specification of obstruction of justice, in violation of Articles 81, 120, 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 920, 934 (2016) [UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for five years, and reduction to E-1.

### A. The Crimes

On 9 June 2017, appellant, along with three other soldiers, conspired to sexually assault PFC HS. Their plan centered on inviting PFC HS to a party and getting her so drunk that appellant and his co-conspirators could "run a train" on her. After getting PFC HS "the drunkest [she had] ever been in her life," appellant and his three co-conspirators took turns sexually assaulting her.

In September of that same year, after realizing that PFC HS reported the sexual assaults, appellant, his three co-conspirators to the sexual assault, and two

---

[2] Both appellant and appellee, in their pleadings before this court, refer to First Sergeant (1SG) MC. No member detailed to appellant's court-martial, officer or enlisted, had the initials MC. The member whose challenge was denied and upon which appellant's first assigned error focuses is 1SG MS.

[3] By the time of trial, PFC HS had been promoted to the rank of Specialist. For the sake of clarity, her rank at the time of the offense and as it appears on the charge sheet is used throughout this opinion.

additional soldiers agreed to obstruct justice by lying to law enforcement when asked about the events of 9 June 2017.

### B. The Panel – Referral, Assembly, and Challenges

Appellant's case was referred to a general court-martial comprised of twelve members. Considering appellant's forum election of an enlisted panel and consistent with the convening order to which appellant's case was referred, the court-martial was to be comprised of six officers and six enlisted members. At assembly, the total number of members was eleven; one enlisted member was excused without replacement.[4]

Following voir dire, the government challenged for cause Major (MAJ) IW and 1SG AA. The defense challenged for cause 1SG KB and 1SG MS. The military judge granted all causal challenges except the defense challenge of 1SG MS. The government and defense both exercised their single peremptory challenge; the former challenged COL MH and the latter CSM TA. The result, after challenges, was a panel of six members, four officers and two enlisted members.[5]

### C. Voir Dire and Challenges for Cause

During general voir dire the military judge asked the standard twenty-eight questions found in the Military Judges' Benchbook. See Dept't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 2-5-1 (1 Sep. 2014) [Benchbook]. Both trial and defense counsel proceeded to ask general voir dire questions, followed by individual voir dire. Among those recalled for individual voir dire were MAJ IW, 1SG AA, 1SG KB, and 1SG MS. Following individual voir dire, the military judge granted the government's causal challenge of MAJ IW due to his admissions that, based on his prior experience as a military police officer, he questioned his ability to be fair and impartial. The military judge also granted the government's causal challenge of 1SG AA based on his prior service as a panel member on a court-martial of one of appellant's co-conspirators, PFC Timothy Evans. The defense did not object to the government's causal challenges of MAJ IW and 1SG AA. The voir dire responses of 1SGs KB and MS, both during the group and individual voir dire sessions, are relevant to the resolution of the issue before us and are addressed in detail below.

---

[4] Colonel (COL) MH, Lieutenant Colonel (LTC) BA, LTC MA, LTC RJ, Major (MAJ) IW, MAJ PA, Command Sergeant Major (CSM) RW, CSM TA, 1SG MS, 1SG AA, and 1SG KB.

[5] Lieutenant Colonel BA, LTC MA, LTC RJ, MAJ PA, CSM RW, and 1SG MS.

### 1. First Sergeant KB

During group voir dire, the military judge asked: "Has anyone or any member of your family or anyone close to you personally ever been the victim of an offense similar to any of those charged in this case; again, conspiracy, sexual assault, and obstruction of justice?"[6] She responded in the negative. However, her responses to the panel member "questionnaire" indicated that she was, in fact, the victim of a sexual assault.

During individual voir dire, the following colloquy occurred between defense counsel and 1SG KB:

> Q. With regard to your questionnaire that you were -- that you were provided by the legal office that you filled out --
> --
>
> A. Yes, sir.
>
> Q. ---- I believe that you indicated that you, yourself, were the victim of a crime?
>
> A. Yes, sir.
>
> Q. Okay, and that crime was sexual in nature?
>
> A. Yes, sir.
>
> Q. Okay. The perpetrator was a fellow Soldier?
>
> A. Yes, sir.
>
> Q. Okay. Approximately when was that?
>
> A. 2003, sir.
>
> Q. Do you remember what the outcome was in that case; was there a prosecution, or?

---

[6] This is question number six from the standard Benchbook questions, which reads: "Has anyone, or any member of your family, or anyone close to you personally ever been the victim of an offense similar to any of those charged in this case?" Benchbook, para. 2-5-1.

A. No, sir. There was not a prosecution, sir.

Q. Okay. Is it fair to say that was a significant event in your life?

A. Yes, sir.

Questioning by the military judge followed:

Q. First Sergeant [KB], let me just ask you a couple of questions in follow-up. So this event, it happened in 2003 you said?

A. Yes, sir.

Q. When you came in here and saw the flyer, you heard that this case involves sexual assault, did that in any way trigger any memories or emotions from this experience that you had?

A. No, sir.

Q. Is there anything about what happened to you that you believe will come back in any way as you hear evidence in this case?

A. No, sir.

Q. Is it something that you think about on a regular basis?

A. No, sir.

Q. Are you confident that you can set aside what happened, however significant it may be, in terms of deciding the guilt and innocence of the accused in this trial?

A. Yes, sir.

Q. And you're convinced you can follow the instructions I give you and the law as I give you in this case?

A. Yes, sir.

Defense counsel challenged 1SG KB for cause, citing both actual and implied bias, the former by express declaration and the latter by implication. In making the challenge, defense counsel noted:

> Your Honor, First Sergeant [KB] has indicated that she was, herself, the victim of sexual assault by her platoon leader on her questionnaire. For whatever reason, although the Court's questions are very, very clear -- if they've ever been a victim of a similar offense. She did not answer that question. I do think that should be a factor that we should take into consideration as a concern for her involvement on it. When asked in individual voir dire, she indicated that this was a significant event in her life, and she exhibited physically in the courtroom, which could be observed as somewhat -- I don't know how to describe it, but a reaction to -- a physical reaction to the fact that no charges had ever been preferred or any prosecution sought in that case.
>
> So based on that, we believe -- and the fact that she did not disclose it initially, we believe that it is actual bias. Even if it was not actual bias, given the liberal grand -- grant mandate, we believe that the public looking at this proceeding would not believe that someone who was, themselves, a victim of sexual assault by a fellow Soldier, didn't disclose it, and indicated that it was, in fact, a significant event in their life would have questions with regard to that member's ability to be fair and impartial.

In opposing the causal challenge, the trial counsel argued:

> The event in question was 16 years ago, approximately. She stated that this doesn't trigger – the flyer and the facts of the case as presented on the flyer at least didn't trigger a memory. She doesn't think about the event regularly, and she answered your question that she would be able to set aside any past occurrences to try this case fairly and impartially.

In his ruling granting the challenge, the military judge stated:

> All right, in considering the liberal grant mandate, I am going to grant that challenge for cause. Although I have no doubt from her answers to me that First Sergeant [KB]

6

would do her utmost to consider only evidence in the charges in this case, I am, too, concerned about her not disclosing up front that she was apparently a victim of prior sexual assault in the questionnaire. Maybe that was just a misunderstanding, but the fact is she didn't disclose that up front. She did note that this prior event, although it was a while ago, was a fellow Soldier, and it was, she said, a significant event. So I want to grant that challenge for cause.

### 2. First Sergeant MS

During group voir dire, like 1SG KB, 1SG MS also replied in the negative to the question about prior victimization. Following group voir dire by the military judge and prior to any individual voir dire, the ATC advised the military judge that 1SG MS's response to the aforementioned "self or family member victim" question was inaccurate. The ATC noted:

[S]ir, I just wanted to bring to the court's attention that First Sergeant [MS] was voir-dired on a previous court-martial for a co-accused, and at that time, it was brought to the court's attention that her daughter was the victim of sexual assault. I know she did not raise her hand when you asked if someone close to you or a family member was a victim of similarly charged crimes. I'm not sure why she didn't raise her hand, but I did want to ensure the defense had the same knowledge as the government.

Individual voir dire by defense counsel revealed the following:

Q. First Sergeant [MS], the questions that I have for you relate to information that you provided to the court and I believe is part of the questionnaire that you filled out.

A. Okay.

Q. Okay. We don't have to go into the details too much here, but I think you understand why we have to ask about it. So my understanding, based on your questionnaire, is that your daughter was involved in a sexual assault case. Is that right?

A. That's correct, sir.

7

. . .

Q. All right. So your daughter was involved in a sexual assault case? Is that correct?

A. That's correct, sir.

Q. Do you know if alcohol was involved in that case?

A. No, there wasn't.

Q. Okay. The perpetrator in that case, was it a fellow Soldier?

A. Yes, it was a Soldier.

Q. Okay. And this occurred in approximately 2012?

A. That's correct, sir.

Q. Okay. Is it fair to say that was a significant event in your life?

A. Yes, it was.

Q. As well as your daughter's?

A. Correct.

Q. What was your reaction when you came in and saw what the charges were in this case?

A. I really had no reactions as far as -- I mean, it didn't shock me or anything if that's what you're asking.

Q. Sure, sure. Fair to say that you thought about your daughter, though?

A. No, not at all.

The military judge followed up, asking:

Q. First Sergeant [MS], so for this incident happening, did you say 2012?

A. Yes, sir.

Q. Was your daughter a Soldier as well?

A. Negative.

Q. Okay. And was she over 18 or under 18?

A. Under 18.

Q. Okay. Do you have any concerns whatsoever in sitting in a case that involves an allegation of sexual assault between two Soldiers?

A. Negative. I do not, sir.

Q. Are you convinced that you can follow my instructions and consider only the evidence in this case and not bring anything, as in outside experience, into the courtroom ----

A. Yes, sir.

Q. ---- when deciding guilt or innocence?

A. Yes, sir,

In challenging 1SG MS, defense counsel argued:

The basis for that challenge is similar to First Sergeant [KB]. She did not disclose that a close family member had been the victim of a sexual assault. It was the government that brought it to the court and the defense's attention, and she did disclose it in her data sheet that -- that she had brought that to the attention of the court in a previous case, which, again, raises a similar concern as did First Sergeant [KB].

If she disclosed it previously and then was not permitted to serve on that case, why wasn't it disclosed here given the fact that it was a significant event in her life, a significant event in her daughter's life; that it happened in 2012, and on the data sheet, she indicates that the perpetrator is at Leavenworth?

So given everything that we've seen there, it may – may not rise to the level of actual cause, but, again, given the liberal grant mandate, given the reality that we have that she didn't disclose it here, she previously disclosed it and was not permitted to serve on that case, I believe there is a significant question as to implied bias. And on that basis, we would ask the court to excuse First Sergeant [MS] for cause.

In opposing the challenge, the government argued:

Again, it was not as long, but it was still 6 years prior. She said looking at the flyer she didn't have any reaction. There was no alcohol in that case, so the facts would be substantially dissimilar in this case. And she also said that she could be fair and impartial and would have no issues setting aside any other occurrences to try this case fairly.

When the military judge asked about 1SG MS's non-disclosure of the prior sexual assault of her then minor child, the government argued: "Your Honor, I think that could be as simple as maybe she was thinking that she gave it on the questionnaire, knowing that it was before the court. I don't think that that indicates an evasive response in any manner or anything like that."

Without any further discussion or additional input from defense counsel, the military judge denied the challenge for cause, concluding:

All right, having considered the liberal grant mandate and actual and implied bias, the challenge for cause for First Sergeant [MS] is denied.

Obviously, every member is different and brings into this room different experiences, and so we have to consider each individually. And although there is that discrepancy about the questionnaire, she did in fact answer forthrightly when we asked her about it on the record here. She did disclose it was her daughter. It's not her personally, not that that lessens it as an impact on her, but it is one step removed from her personal experience. She did say the perpetrator was a Soldier, but her daughter was not a Soldier. And she was under 18 at the time, which, again, is factually distinct from this case. She also said that there was no alcohol involved in that situation, which is

also factually distinct from this case. It was 6 years ago.
I found her answers to be very forthright and unhesitating.
And I was convinced when she told me that she was
convinced that she could follow the law in this case and
apply or consider only the evidence in this case.

### D. Judicial Notice of Co-Conspirator's Case

We hereby sua sponte take judicial notice of the record of trial in *United States v. PFC Timothy J. Evans*, ARMY 20180651, the general court-martial of one of appellant's co-conspirators. *See* Military Rule of Evidence 201; *see also United States v. Koneski*, 4 M.J. 911, 914 (A.F.C.M.R. 1977) (citations omitted) ("We may properly notice judicially, for an appropriate purpose, our own records in cases other than the one presently under consideration.").

As noted above, when asked by the military judge in the case at bar whom the parties wanted recalled for individual voir dire, the ATC advised the court that 1SG MS, in a prior court-martial of one of appellant's co-conspirators, had indicated her daughter was a victim of sexual assault. The case to which the ATC was referring was *United States v. Evans*. While government counsel advised the military judge about the occurrence of a prior voir dire session and the eventual disclosure of 1SG MS's daughter's status as a victim, the government failed to advise the military judge that 1SG MS was similarly "dishonest" in PFC Evans' case when responding to the military judge's initial group voir dire question concerning prior victimization.

In *Evans*, one of the charges PFC Evans faced was sexual assault of PFC HS by committing a sexual act upon her when "[PFC Evans] knew or reasonably should have known that PFC HJS was asleep, unconscious, or otherwise unaware that the sexual act was occurring."[7] During voir dire in that case, a voir dire that occurred just forty-nine days prior to voir dire in appellant's case, the military judge[8] asked the members, to include 1SG MS, "Has anyone or any member of your family or anyone close to you personally ever been the victim of an offense similar to the offenses charged?" First Sergeant MS replied in the negative, as did all other members.

Only when the court and the parties completed group voir dire and the military judge asked the parties whom they wanted recalled for individual voir dire

---

[7] But for the named accused, PFC Evans and appellant were charged with identical sexual assault specifications.

[8] The military judge in *Evans* was not the same military judge in appellant's case.

was the court made aware that 1SG MS was less than candid with the court, a fact brought forth by the assistant defense counsel. The following colloquy between the military judge and assistant defense counsel occurred:

> ADC: . . . And then First Sergeant [MS] noted in her questionnaire that her -- she had a daughter that was a victim of sexual assault against another Soldier.
>
> MJ: I think she answered in the negative to my question, but she wrote in her questionnaire that she has a daughter who was or is the victim?
>
> ADC: That's correct, Your Honor.
>
> MJ: Right. Okay.

During individual voir dire, the facts and circumstances surrounding 1SG MS's daughter's assault were developed as well as her stated ability to put her daughter's assault aside and judge PFC Evans only on the evidence before the court. Why 1SG MS answered the military judge's question regarding whether she or a family member had been the victim of any offense similar to one on the flyer in the negative was never explored or developed. When challenged for cause by the defense, the military judge granted the challenge citing "implied bias" and the "liberal grant mandate."

## II. LAW AND DISCUSSION

### A. Right to an Unbiased Military Panel

An accused has a "constitutional right, as well as a regulatory right, to a fair and impartial panel." *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (quoting *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001)). "Indeed, 'impartial court-members are a *sine qua non* for a fair court-martial.'" *Wiesen*, 56 M.J. at 174 (quoting *United States v. Modesto*, 43 M.J. 315, 318 (C.A.A.F. 1995)).

Rule for Courts-Martial (R.C.M.) 912 directs excusal for cause whenever it appears that a member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N). "This rule includes actual bias as well as implied bias." *United States v. Miles*, 58 M.J. 192, 194 (C.A.A.F. 2003) (citation omitted). Actual bias and implied bias are "separate tests, but not separate grounds for a challenge." *Id.* (citation omitted). "The burden of establishing that grounds for a challenge exist is upon the party making the challenge." R.C.M. 912(f)(3); *see United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996) (citing R.C.M. 912(f)(3)).

### B. Actual v. Implied Bias

Actual bias is "'bias in fact.'" *United States v. Hennis*, 79 M.J. 370, 384 (C.A.A.F. 2020) (quoting *United States v. Wood*, 299 U.S. 123, 133 (1936)). "It is 'the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Id.* (quoting *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007)). It is a "personal bias which will not yield to the military judge's instructions and the evidence presented at trial." *Id.* (quoting *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012)). "Actual bias is a question of fact to be decided by the trial judge on the basis of the responses of the member and any other evidence presented at the court-martial." *United States v. Velez*, 48 M.J. 220, 224 (C.A.A.F. 1998); *see also United States v. Bragg*, 66 M.J. 325, 326 (C.A.A.F. 2008).

Implied bias is "bias conclusively presumed as [a] matter of law." *Hennis*, 79 M.J. at 385 (quoting *Wood*, 299 U.S. at 133). It is "bias attributable in law to the prospective juror regardless of actual partiality." *Id.* (quoting *Wood*, 299 U.S. at 134); *see Black's Law Dictionary* 198 (10th ed. 2014) ("Bias, as of a juror, that the law conclusively presumes because of kinship or some other incurably close relationship; prejudice that is inferred from the experiences or relationships of a . . . juror . . . ."). "The core of the implied bias test 'is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel.'" *United States v. Rogers*, 75 M.J. 270, 271 (C.A.A.F. 2016) (quoting *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015)).

### C. Standard of Review – Plain Error v. Abuse of Discretion

#### 1. Plain Error

When an appellant raises a new ground for challenge against a member not previously raised at trial, the court reviews the post-trial challenge for "plain or obvious error." *United States v. Ai*, 49 M.J. 1, 5 (C.A.A.F. 1998) (citing *Velez*, 48 M.J. at 225); *United States v. Bannwarth*, 36 M.J. 265, 268 (C.M.A. 1993). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)).

In its pleadings before this court, the government argues this court should apply a plain error analysis to the military judge's denial of appellant's causal challenge of 1SG MS. The government argues appellant abandoned the basis "articulated to the military judge [at trial]—that 1SG MC (sic) had implied bias based upon her failure to disclose—in favor of a generalized, unpreserved basis that the family of sexual assault victims cannot serve as members in a sexual assault court-martial" thus raising a "new ground for his challenge on appeal."

We disagree. Contrary to the government's argument, defense counsel raised an implied bias challenge that had as its basis the fact that 1SG MS's daughter was the victim of a sexual assault, an assault that 1SG MS failed to disclose when required to do so during general voir dire by the military judge. When making a challenge against 1SG MS, defense counsel opened with, "t]he basis for that challenge is similar to First Sergeant [KB]" and ended with "I believe there is a significant question as to implied bias." The challenge regarding 1SG KB addressed not only her failure to disclose her status as a victim, but that status as well. As such, by raising a challenge for reasons "similar to First Sergeant KB," the defense raised both non-disclosure and status in support of the implied bias challenge against 1SG MS. Consequently, we review the military judge's denial of the causal challenge against 1SG MS for an abuse of discretion.

### 2. *Abuse of Discretion*

A military judge's ruling on a challenge for cause is reviewed for an abuse of discretion. *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002) (citing *United States v. Armstrong*, 54 M.J. 51, 53 (C.A.A.F. 2000)). An abuse of discretion occurs "if the military judge's findings of fact are clearly erroneous or if the decision is influenced by an erroneous view of the law." *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (quoting *United States v. Quintanilla*, 63 M.J. 29, 35 (C.A.A.F. 2006)). The abuse of discretion standard calls "for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011) (quoting *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)). "[M]ilitary judges are enjoined to be liberal in granting defense challenges for cause." *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007) (citing *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006)); *United States v. Leonard*, 63 M.J. 398, 402 (C.A.A.F. 2006). "[I]n close cases military judges are enjoined to liberally grant challenges for cause." *Peters*, 74 M.J. at 34 (quoting *Clay*, 64 M.J. at 277) (internal quotation marks omitted). A causal challenge addresses disqualification based on either actual bias, implied bias, or both, and is evaluated based on the "totality of the circumstances." *United States v. Richardson*, 61 M.J. 113, 118 (C.A.A.F. 2005).

The degree of deference afforded a military judge's decision varies depending on which bias the judge's ruling addresses. An actual bias ruling is entitled to great deference while an implied bias ruling less, specifically less deference than abuse of discretion but greater than de novo. *See Clay*, 64 M.J. at 276; *Dockery*, 76 M.J. at 96.

Regarding the deference afforded a military judge's ruling on an implied bias challenge, it exists on a sliding scale dependent on whether, and to what extent, the military judge places his analysis on the record. Thorough, well-reasoned analysis

places the ruling on the end closest to abuse of discretion review. The absence of any analysis places the judge's ruling at the end closest to de novo review. In 2002, our Superior Court stated reviewing courts "do not expect record dissertations but, rather, a clear signal that the military judge applied the right law. While not required, where the military judge places on the record his analysis and application of the law to the facts, deference is surely warranted." *Downing*, 56 M.J. at 422. On no fewer than six occasions since, our Superior Court has reminded military judges of the importance of placing their analysis on the record. *See Richardson*, 61 M.J. at 120; *United States v. Terry*, 64 M.J. 295, 305 (C.A.A.F. 2007); *Bragg*, 66 M.J. at 326; *Peters*, 74 M.J. at 34; *Rogers*, 75 M.J. at 273; *Dockery*, 76 M.J. at 96.

Reversal will "indeed be rare" when a military judge "considers a challenge based on implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record." *Clay*, 64 M.J. at 277. Merely parroting the standard, however, without more, will rarely constitute the level of analysis contemplated by *Downing* and its progeny. *See Dockery*, 76 M.J. at 96 (quoting *Peters*, 74 M.J. at 34) ("[M]ere 'incantation of the legal test [for implied bias] without analysis is rarely sufficient in a close case.'").

### D. First Sergeant MS's Non-Disclosure of Her Daughter's Sexual Assault

First Sergeant MS, along with every other panel member, was asked a simple, straightforward question during general voir dire by the military judge, "Has anyone or any member of your family or anyone close to you personally ever been the victim of an offense similar to any of those charged in this case; again, conspiracy, sexual assault, and obstruction of justice?" She replied in the negative, a response that was absolutely false, or, to use our Superior Court's terminology, "dishonest." *Commisso*, 76 M.J. at 322. A panel member "is dishonest when he fails to exhibit 'complete candor.'" *Id.* (quoting *United States v. Albaaj*, 65 M.J. 167, 169 (C.A.A.F. 2007)). The test for member dishonesty "is not whether the panel members were willfully malicious or intended to deceive—it is whether they gave objectively correct answers." *Id.* (citing *Albaaj*, 65 M.J. at 170).

When the defense challenged 1SG MS for cause, the military judge asked the government to explain the non-disclosure, to which government counsel responded, "Your Honor, I think that could be as simple as maybe she was thinking that she gave it on the questionnaire, knowing that it was before the court. I don't think that that indicates an evasive response in any manner or anything like that."

The government's attempt to provide an innocent motive suffers from several flaws. First, the focus is not on intent but on whether the member "gave objectively correct answers." *Commisso*, 76 M.J. at 322. Second, nothing on the record supports the explanation provided by the government. Neither counsel nor the military judge asked 1SG MS to explain why she failed to answer the military

judge's question honestly. Third, 1SG MS knew or should have known what the "objectively correct answer" was to the question at issue, since she had been similarly dishonest in answering that same question just forty-nine days prior, in *United States v. Evans*. Any benefit of the doubt to which she may have been entitled regarding how to answer the question properly was gone by the time of appellant's trial.

### E. Denial of Causal Challenge of 1SG MS

Having found that defense counsel preserved both their actual and implied bias challenges against 1SG MS and determined that abuse of discretion review applies, we address actual and implied bias in turn.

### 1. Actual Bias

A review of the record reveals the absence of any actual bias on the part of 1SG MS. When asked whether she had any concerns about sitting on a case involving sexual assault, she replied in the negative. When asked if she could follow the military judge's instructions and decide the case only on the evidence presented and without any outside influence, she replied in the affirmative. The record reveals no indication of actual bias on 1SG MS's part, based on her responses to the questions from counsel and the military judge. None of her responses were qualified or raised any concerns of "personal bias" incapable of "yield[ing] to the military judge's instructions and the evidence presented at trial." *Nash*, 71 M.J. at 88.

Even defense counsel, when challenging 1SG MS, appeared to struggle with the actual bias component of the challenge, arguing, in part, "So given everything that we've seen there, it may – may not rise to the level of actual cause, but, again, given the liberal grant mandate . . . ."

In ruling on the challenge, the military judge noted, in part:

> All right, having considered the liberal grant mandate and actual and implied bias, the challenge for cause for First Sergeant [MS] is denied.
>
> . . .
>
> I found her answers to be very forthright and unhesitating. And I was convinced when she told me that she was convinced that she could follow the law in this case and apply or consider only the evidence in this case.

Considering the "great deference" afforded a military judge's ruling on actual bias, and the fact that he had the opportunity to observe 1SG MS's demeanor and assess her credibility as she answered voir dire questions, we find no abuse of discretion in denying the challenge based on actual bias. *Id.*

### 2. Implied Bias

The same cannot be said regarding the military judge's implied bias ruling, however.

Beyond citing to the "liberal grant mandate," the military judge's ruling provides no analysis regarding appellant's implied bias challenge of 1SG MS. The ruling is, at best, "a mere '[i]ncantation of the legal test [for implied bias] without analysis." *Dockery*, 76 M.J. at 96 (quoting *Peters*, 74 M.J. at 34). By supplying only a barebones ruling with no analysis of implied bias, the military judge failed to heed our Superior Court's advice to provide a "clear signal" that the correct law was being applied. *Downing*, 56 M.J. at 422. As such, we afford little to no deference to the military judge's implied bias ruling in this case.

A line-by-line review of the military judge's eleven-line[9] ruling highlights the absence of any implied bias analysis. Further, it highlights the arbitrary and capricious nature of the military judge's ruling, broken down line by line as follows:

> [Line 1] All right, having considered the liberal grant mandate and actual and implied bias, the challenge for cause for First Sergeant [MS] is denied.
>
> [Line 2] Obviously, every member is different and brings into this room different experiences, and so we have to consider each individually.
>
> [Line 3] And although there is that discrepancy about the questionnaire, she did in fact answer forthrightly when we asked her about it on the record here.
>
> [Line 4] She did disclose it was her daughter.

---

[9] Our decision rests on a qualitative versus quantitative analysis of the ruling at issue. We are not suggesting than an eleven-sentence ruling could not meet the demands of *Downing* and its progeny.

[Line 5] It's not her personally, not that that lessens it as an impact on her, but it is one step removed from her personal experience.

[Line 6] She did say the perpetrator was a Soldier, but her daughter was not a Soldier.

[Line 7] And she was under 18 at the time, which, again, is factually distinct from this case.

[Line 8] She also said that there was no alcohol involved in that situation, which is also factually distinct from this case.

[Line 9] It was 6 years ago.

[Line 10] I found her answers to be very forthright and unhesitating.

[Line 11] And I was convinced when she told me that she was convinced that she could follow the law in this case and apply or consider only the evidence in this case.

Notably absent is any mention of the public's perception of fairness or that implied bias is viewed objectively through the eyes of a member of the public familiar with "the unique structure of the military justice system." *United States v. Woods*, 74 M.J. 238, 243–44 (C.A.A.F. 2015) (citing *Bagstad*, 68 M.J. at 462). Regarding line 3, the finding by the military judge is misleading. There was no "discrepancy" regarding 1SG MS's questionnaire; rather, there was a conflict regarding what she answered on the questionnaire and how she answered, while under oath, the military judge's general voir dire question. Her general voir dire answer was objectively dishonest. Confronted with the conflicting answers, neither counsel nor the military judge sought to "fill any implied bias gaps" that 1SG MS's answer created. *Clay*, 64 M.J. at 277.

Regarding line 5, we are at a loss to see how a member of the public would distinguish between a panel member who was a victim of sexual assault and their minor child. In lines 6, 7, and 8, the military judge focuses on factual differences between appellant's case and the sexual assault of 1SG MS's daughter. While the military judge's factual conclusions are not clearly erroneous, he failed to provide any analysis concerning the import of those factual differences when viewed by an objective member of the public. In line 9, the military judge repeated 1SG MS's answer that her daughter was assaulted six years prior to appellant's court-martial. While, again, not a clearly erroneous factual conclusion, the military judge did not

discuss the significance of this fact. For example, there is no discussion concerning how the sexual assault of 1SG MS's daughter—something 1SG MS described as a "significant" event for both her and her daughter—continued to affect 1SG MS and her daughter.[10] Finally, lines 10 and 11 speak to the military judge's observations of 1SG MS as she answered questions during voir dire, describing her as "forthright" and "unhesitating," observations that are more relevant to actual bias analysis and, in any event, were in direct conflict with 1SG MS's lack of candor during the military judge's general voir dire.

The military judge's ruling on 1SG MS is even more curious when compared to his ruling on the challenge of 1SG KB. Both 1SG KB and 1SG MS were dishonest during general voir dire; the reason or rationale for the dishonesty was not explored or explained; 1SG KB was the victim of a sexual assault, whereas 1SG MS's daughter was the victim; at the time of the assault, 1SG KB was an adult and 1SG MS's daughter was a minor; 1SG KB's assault occurred sixteen years prior whereas 1SG MS's daughter's sexual assault occurred six years prior; the perpetrator in both cases was a soldier; 1SG KB was a soldier herself when assaulted whereas 1SG MS's daughter was a civilian; whether alcohol was involved in 1SG KB's assault is unanswered because no one asked, whereas 1SG MS's daughter's assault did not involve alcohol; 1SG KB's assailant was not prosecuted, whereas 1SG MS's daughter's assailant was; 1SG KB and 1SG MS both noted the assault was a significant event in their lives, the latter adding it was also a significant event in her daughter's life; neither had a reaction to seeing the flyer in the case; neither believed that the past events would play a role in the court-martial or enter into their decision making; and both agreed they could follow the military judge's instructions and decide the case only on the evidence presented.

Given the similarities between the voir dire responses of 1SGs KB and MS, we are left wondering why 1SG MS was permitted to serve on the panel given the prior excusal of 1SG KB. Considering the totality of the circumstances, and finding no plausible rationale in the record, we conclude the military judge's decision not to excuse 1SG MS in light of his decision to excuse 1SG KB was "arbitrary" and "clearly unreasonable." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)).[11]

---

[10] We recognize that "a prior experience with or connection to the crime in question is not per se disqualifying." *Terry*, 64 M.J. at 295. However, when addressing causal challenges against panel members that have such experiences or connections, it is critical for military judges to gather sufficient factual information in order to apply the test for implied bias in a comprehensive manner.

[11] A review of the number of members upon assembly of the court, the breakdown of

(continued . . .)

In conclusion, excusal of 1SG MS for implied bias was not a "close case." Assuming arguendo otherwise, there is simply no record before us demonstrating "whether, how, and with what nuance, the military judge applied the principles embodied in the implied bias doctrine." *Clay*, 64 M.J. at 278. As noted above, "in close cases military judges are enjoined to liberally grant challenges for cause." *Peters*, 74 M.J. at 34 (quoting *Clay*, 64 M.J. at 277) (internal quotation marks omitted). Viewed objectively and considering the totality of the circumstances, we believe 1SG MS's inclusion on appellant's court-martial panel results in "too high a risk that the public will perceive" that appellant received less than a court-martial composed of fair, impartial, unbiased members. *Wiesen*, 56 M.J. at 176; *Woods*, 74 M.J. at 243–44. Consequently, we conclude the military judge abused his discretion by failing to grant the causal challenge against 1SG MS based on implied bias.

### III. CONCLUSION

The findings and sentence are SET ASIDE. A rehearing may be ordered by the same or different convening authority.

Chief Judge (IMA) KRIMBILL and Senior Judge BROOKHART concur.

---

(. . . continued)

those members, and the order in which the military judge granted challenges in this case suggests a possible, alternative explanation as to why 1SG MS was not excused given the prior excusal of 1SG KB. The court-martial began with six officers and five enlisted members. After voir dire, the military judge granted three causal challenges, excusing one officer and two enlisted members. The composition of the court-martial at that point was five officers and three enlisted members. A grant of the causal challenge against 1SG MS would have taken the court-martial to below the required one-third enlisted membership. *See* UCMJ art. 25(c)(1); R.C.M. 503(a)(2). After the exercise of peremptory challenges, the court-martial panel, with 1SG MS, was comprised of four officer and two enlisted members. Had 1SG MS been excused, either upon reconsideration requested by appellant or sua sponte by the military judge, the court-martial panel would have fallen below the required one-third enlisted membership. We remind military judges and practitioners that concern about inconvenience resulting from the need to halt court-martial proceedings in order to add additional panel members to satisfy quorum requirements "is not an adequate ground to deny a challenge for cause." *United States v. Smart*, 21 M.J. 15, 20–21 (C.M.A. 1985) (citing *United States v. Mason*, 16 M.J. 455, 458–59 (C.M.A. 1983) (Everett, C.J., dissenting)).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court