# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM S32629

_____

### UNITED STATES
*Appellee*

**v.**

### Louis K. MURPHY
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 10 August 2021

_____

*Military Judge:* Tobin C. Griffeth.

*Sentence:* Sentence adjudged 3 October 2019 by SpCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 1 November 2019 and reentered on 23 June 2021: Bad-conduct discharge, confinement for 3 months, reduction to the grade of E-2, and forfeiture of $1,256.00 pay per month for three months.

*For Appellant:* Major Alexander A. Navarro, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire; Jordan E. Michel (legal intern).[1]

Before LEWIS, RAMÍREZ, and CADOTTE, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge LEWIS and Judge CADOTTE joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

[1] Mr. Michel was at all times supervised by an attorney admitted to practice before this court.

_____

RAMÍREZ, Judge:

A military judge found Appellant guilty, consistent with his pleas, of one specification of a one-time wrongful use of a controlled substance (marijuana) and two specifications of wrongful use of a controlled substance (marijuana) on divers occasions, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a;[2] and one specification of wrongful possession of a controlled substance (marijuana), also in violation of Article 112a, UCMJ. The dates of the offenses ranged from 1 December 2017 to 22 August 2019.

A special court-martial composed of a panel of officer members sentenced Appellant to a bad-conduct discharge, confinement for three months, reduction to the grade of E-2, and forfeiture of $1,256.00 pay per month for three months. There was no plea agreement. In the convening authority's initial Decision on Action memorandum, the convening authority took "no action" on the findings or on the sentence. The military judge entered judgment on 1 November 2019.

Appellant raises five issues on appeal: (1) whether the military judge abused his discretion by instructing the members of the option to sentence Appellant to a fine; (2) whether the military judge abused his discretion by granting the prosecution's challenge to First Lieutenant (1st Lt) BM during panel selection; (3) whether the sentence was inappropriately severe; (4) whether the convening authority improperly failed to take action in Appellant's case; and (5) whether it was plain error for trial counsel to suggest Appellant's military duties were affected by his marijuana use.

On 21 May 2021, we remanded the case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum, finding that the action taken on Appellant's adjudged sentence was ambiguous and incomplete as reflected in raised issue (4). *United States v. Murphy*, No. ACM S32629, 2021 CCA LEXIS 251, at *9 (A.F. Ct. Crim. App. 21 May 2021) (unpub. op.). On 8 June 2021, Appellee moved for reconsideration of our order to remand and requested we stay any remand proceedings.[3] Appellant did not oppose the motion.

---

[2] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] The Government's basis for reconsideration was based on reasoning from *United States v. Brubaker-Escobar*, 81 M.J. ___, No. 20-0345, 2021 CAAF LEXIS 508, at *10 (C.A.A.F. 4 Jun. 2021), a decision that was subsequently recalled and the judgment

Before we ruled on the motion for reconsideration and the request for a stay, on 22 June 2021 the convening authority's successor signed a second Decision on Action memorandum and took action on the sentence by approving it in its entirety. The next day, 23 June 2021, the detailed military judge signed a modified entry of judgment at 0728 hours.

Later on 23 June 2021, our court—unaware of the above—granted the Government's motion for reconsideration, withdrew our 21 May 2021 opinion, and determined the request for a stay was moot. *United States v. Murphy*, No. ACM S32629, 2021 CCA LEXIS 356, at *1 (A.F. Ct. Crim. App. 23 Jun. 2021) (order). On 21 July 2021, we granted the Government's unopposed motion to attach the second Decision on Action memorandum and the modified entry of judgment.

We are satisfied that the successor convening authority and the detailed military judge acted within their respective authorities while the remand was in effect for two reasons. First, our court did not issue a stay pending resolution of the Government's reconsideration motion. Second, the 22 June 2021 Decision on Action memorandum and the 23 June 2021 modified entry of judgment were completed before our court granted the reconsideration motion and withdrew our 21 May 2021 opinion.

We find the successor convening authority's decision to approve the sentence in its entirety complies with applicable law and the modified entry of judgment correctly reflects the post-trial actions taken during the remand of this case.[4] We conclude that Appellant is entitled to no further relief for issue (4).

We now address raised issues (1), (2), (3), and (5) in Appellant's assignments of error brief. We also consider facially unreasonable appellate delay as this opinion was released more than 18 months after docketing. Finding no error materially prejudicial to Appellant, we affirm the findings and sentence.

## I. BACKGROUND

An investigation into Appellant's drug use was initiated after he tested positive via urinalysis for marijuana. Nevertheless, Appellant's marijuana use continued and he went on to test positive for marijuana nine more times.

---

vacated. ___M.J. ___, No. 20-0345, 2021 CAAF LEXIS 683, at *1 (C.A.A.F. 19 Jul. 2021).

[4] The Statement of Trial Results failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.). We authorized a detailed military judge to correct this on remand and the missing information was added to the modified entry of judgment.

Appellant first started using marijuana in December 2017, shortly after having his wisdom teeth removed. He was stationed at Ellsworth Air Force Base (AFB), South Dakota, at the time. He explained to the military judge that he was already depressed after returning from his deployment to Afghanistan and that the combination of the pain and the depression led him to smoke marijuana.

Appellant further explained that he used marijuana to "unwind after work." He would drive from South Dakota to Colorado once or twice per month, buy cartridges of vape oil that contained marijuana, then drive back to South Dakota. Once back in South Dakota, he would find a place to park, then smoke marijuana out of a vaping cartridge. Appellant used marijuana daily while stationed at Ellsworth AFB until he received permanent change of station (PCS) orders in December 2018 to Creech AFB, Nevada.

Once Appellant moved to Nevada in December 2018, he stopped smoking marijuana for a "short period of time," according to his providence inquiry. However, he started using marijuana again in January 2019. This time he would buy the marijuana in the Las Vegas area and would also have his ex-girlfriend buy him marijuana. Appellant admitted that he used marijuana daily from January 2019 until he was restricted to base in mid-September 2019.

According to the stipulation of fact in this case, on 16 April 2019 Appellant was selected for random urinalysis testing. His sample was tested by the Air Force Drug Testing Laboratory (AFDTL), where it was determined to be positive for tetrahydrocannabinol (THC), the primary active constituent of marijuana. When Appellant's command was notified of the positive result, he was escorted to the Air Force Office of Special Investigations (AFOSI) and interviewed by AFOSI agents. AFOSI also obtained consent for the search of Appellant's car, which contained what Appellant described as a "spent" marijuana vaping cartridge. This vaping cartridge still contained marijuana residue, for which act Appellant pleaded guilty to wrongful possession of marijuana. On the same day that he was taken to AFOSI, Appellant was informed that he would be required to continue providing urine samples until he provided a sample that tested negative for controlled substances. After the initial positive drug sample, Appellant tested positive for marijuana an additional nine times. After the last positive sample, Appellant's commander restricted him to base, and he stopped testing positive. He was still restricted to base at the time of his court-martial.

Because Appellant pleaded guilty without the protection of a plea agreement, the maximum punishment he faced was forfeiture of two-thirds pay per month for 12 months, reduction to E-1, confinement for 12 months, and a bad-conduct discharge. A fine was also an authorized sentence.

## II. DISCUSSION

### A. Sentencing Instructions

#### 1. Additional Background

During a session held pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), between the military judge and counsel, trial counsel requested the military judge provide an instruction to the members authorizing a fine. Trial counsel argued that a fine was an authorized punished under Rule for Courts-Martial (R.C.M.) 1003 and that Appellant had been unjustly enriched "because [Appellant had] been violating the UCMJ for about two years and . . . getting paid." Later, trial counsel argued to the military judge that unjust enrichment was not a prerequisite to imposing a fine, citing *United States v. Stebbins*, 61 M.J. 366 (C.A.A.F. 2005) (overruled on other grounds). Trial defense counsel objected, argued that this was not a case in which a fine was appropriate because there was no unjust enrichment, and argued that *Stebbins* was distinguishable.

Ultimately, the military judge provided the instruction on a fine as an authorized punishment to the members to consider, but did incorporate the following language from the Discussion to R.C.M. 1003(b)(3): "A fine normally should not be adjudged against a member of the armed forces unless the accused was unjustly enriched as a result of the offense of which convicted." Once the military judge drafted the instruction, he read it into the record and allowed both sides the opportunity to object. Trial counsel and trial defense counsel did not object to the additional language; however, the Defense maintained its general objection to providing the members any instruction regarding a fine.

As to the issue of the fine as a punishment option, the military judge instructed the panel as follows:

> Fine. This court may adjudge a fine, either in lieu of, or in addition to, forfeitures. If you should adjudge a fine, the amount of the fine, along with any forfeitures that you adjudge, may not exceed the total amount of forfeitures which may be adjudged, that is, forfeiture of two-thirds pay per month for 12 months. A fine, when ordered executed, makes the accused immediately liable to the United States for the entire amount of the fine. In your discretion, you may adjudge a period of confinement to be served in the event the fine is not paid. Such confinement to enforce payment of the fine would be in addition to any other confinement you might adjudge and the fixed period being an equivalent punishment to the fine. The total of all confinement adjudged, however, may not exceed 12 months. However, a fine normally should not be adjudged against a member of the Armed

5

Forces unless the accused was unjustly enriched as a result of the offense of which he is convicted.

Ultimately, trial counsel did not recommend a fine during sentencing argument. Instead, trial counsel argued:

A fine is also a punishment that is available. It's not one that the [G]overnment is seeking in this case, but you should know that there are punishment options available to you that we are not seeking. We're not trying to throw the book at him, and you saw that in our case. We are not trying to pile on here. We're taking him at what he said and giving you some more information. We are not trying to pile on because, honestly, 20 months of daily use is enough.

The members did not adjudge a fine as part of Appellant's sentence.

**2. Law**

"We consider allegations of error involving mandatory instructions under a de novo standard of review. We review issues concerning non-mandatory instructions for an abuse of discretion" *United States v. Forbes*, 61 M.J. 354, 357–58 (C.A.A.F. 2005) (citations omitted). "A trial judge has broad discretion to decide what instructions to give court members, and we review that discretion for abuse. The rule applies to sentencing instructions as well." *United States v. Miller*, 56 M.J. 764, 765 (A.F. Ct. Crim. App. 2002) (citations omitted). The "abuse of discretion standard is a strict one." *United States v. Eugene*, 78 M.J. 132, 134 (C.A.A.F. 2018) (internal quotation marks and citation omitted). "To find an abuse of discretion requires more than a mere difference of opinion—the challenged ruling must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Jasper*, 72 M.J. 276, 279–80 (C.A.A.F. 2013) (citation omitted).

R.C.M. 1003(b) authorizes a court-martial to adjudge eight different punishments. A fine is the third enumerated punishment authorized under R.C.M. 1003(b). However, "[a] fine normally should not be adjudged against a member of the armed forces unless the accused was unjustly enriched as a result of the offense of which convicted." R.C.M. 1003(b)(3), Discussion. Nonetheless, "the use of 'normally' in the rule's nonbinding discussion indicates that 'unjust enrichment' is not always a prerequisite to imposing a fine as part of an accused's sentence." *Stebbins*, 61 M.J. at 370.

**3. Analysis**

Although Appellant acknowledges that he did not receive a fine as part of his sentence, he argues that the fine issue was nothing more than subterfuge on the part of the Government. Specifically, Appellant claims that trial counsel

"used the instruction as a means to obtain the sentence the Government actually wanted." Appellant reasons that by having more punishment options in front of the members, the trial counsel misled the members into believing the Government's sentence recommendation was more reasonable by not requesting a fine. We find the military judge did not abuse his discretion.

We begin our analysis by agreeing with Appellant on two points. First, Appellant argues that "there were no facts and circumstances requiring a fine instruction," and we agree. The option of a fine was not a mandatory instruction. Instead, as a non-mandatory instruction, we review the military judge's decision to provide the fine instruction for an abuse of discretion. Second, we agree with Appellant that there is at least some appearance of a sleight of hand on the part of trial counsel. However, the mere appearance of possible subterfuge does not mean that is what actually occurred. Furthermore, instructing the members with regard to a fine did not mislead the members because a fine was an authorized punishment which could have been adjudged.

This leaves us with the question of whether the military judge's ruling to include the requested fine instruction constituted an arbitrary, fanciful, clearly unreasonable, or clearly erroneous action. First, we find that the instruction was correctly written as a matter of law. We find that while there was no reasonable argument that Appellant was unjustly enriched, the remainder of the military judge's instruction ensured the members would not be misled regarding when a fine is normally appropriate. By including the language, "a fine normally should not be adjudged against a member of the Armed Forces unless the accused was unjustly enriched as a result of the offense of which he is convicted," the military judge put the instruction into proper context for the members and tailored the instruction to the case. Accordingly, the military judge's ruling to include the fine instruction was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous.

Because the military judge did not abuse his discretion, we find that Appellant is not entitled to relief.

## B. Challenge to 1st Lt BM for Actual and Implied Bias

Appellant challenges the military judge's findings of both actual and implied bias which led to 1st Lt BM's excusal from Appellant's court-martial panel. Appellant urges us not to provide the military judge the deference normally accorded because the military judge did not explain his reasoning on the record. Appellant argues he suffered prejudice because the military judge's "decision to grant the [P]rosecution's challenge to [1st] Lt BM prevented [Appellant] from having a fair and impartial panel and likely led to a harsher adjudged sentence." Appellant further elaborates that prejudice exists because the Government was able to successfully strike "all three of the members it desired," specifically, by having two of its three challenges for cause granted

and using its peremptory challenge to strike the individual it had unsuccessfully challenged for cause. This "combined with the severe sentence adjudged in the case for a relatively minor offense cast doubt on whether [Appellant] received a fair and impartial [sic] in the eyes of the public *and the accused.*"

For the reasons described below, we do not find prejudice.

**1. Additional Background**

During the court member selection process, the military judge asked the members whether they could follow standard instructions regarding a range of sentences:

> MJ: I will instruct you on the full range of punishments, from no punishment, up to the maximum punishment. You should consider all forms of punishment within that range. Consider doesn't necessarily mean that you would vote for a particular punishment. Consider means that you think about and make a choice in your mind, one way or the other, as to whether that's an appropriate punishment. Each member must keep an open mind and not make a choice, nor foreclose from consideration any possible sentence, until the closed session for deliberations and voting on the sentence. Can each of you follow this instruction? Affirmative response from all members.

After the military judge asked the standard Military Judges' Benchbook[5] questions, trial counsel asked the entire venire "if anybody believes that twelve months of confinement could never be a part of an appropriate sentence for using marijuana." Three members answered in the affirmative, including 1st Lt BM. As a follow-up question, trial counsel asked, "[D]oes anyone believe that a bad-conduct discharge could never be part of a just sentence for using marijuana?" No member answered in the affirmative. When 1st Lt BM returned to the courtroom for individual voir dire, trial counsel asked 1st Lt BM follow-up questions:

> Q [Trial Counsel]. And regardless of whatever the question was, can you just talk to us about what your thoughts are on that?
>
> A [1st Lt BM]. Just, I don't know what the old maximum punishments used to be, but given the recent trend of decriminalization alone, I think the punishments should also be turning the other way as well, but obviously there are still repercussions they have to have.

---

[5] Department of the Army Pamphlet 27–9 at 54–56 (29 Feb. 2020).

Q. Some repercussions, but heavier punishments may not [be] appropriate in a case where marijuana use is the charge?

A. Yes.

Q. So, the two that we specifically asked about, 12 months confinement, is that something that you feel like, would be maybe too severe for a marijuana use?

A. Yes.

Q. We asked about a bad conduct discharge, is that something you feel like might be too severe for a marijuana use?

A. Not necessarily.

. . .

Q. For use, is -- so we talked about 12 months of confinement, but confinement generally is a type of punishment, is that something that you feel is appropriate or not appropriate for marijuana use?

A. Again, I don't know if confinement all the way up there is necessarily a good punishment.

When trial defense counsel had an opportunity to ask 1st Lt BM questions during individual voir dire, further questioning on this topic occurred:

Q [Trial Defense Counsel]. So, in talking about that maximum punishment, the military judge will say that you can at least consider that as a possible punishment, even if you don't impose that. Is that something that you could do?

A [1st Lt BM]. Considering? Yeah, sure, I could consider.

. . .

Q. And you feel like you would be able to follow the military judge's instructions about what the law is?

A. Yes.

Q. And what the punishment in this case is, up to the maximum?

A. Yes.

The military judge then asked individual voir dire questions of 1st Lt BM as follows:

Q [Military Judge]. So if you are instructed . . . that you must consider ----

A [1st Lt BM]. Yes ----

Q. From zero days to 12 months is that within your ability to consider. Or are you, because of the trends that you talked about, of an opinion that well, it doesn't deserve 12, just about no matter what?

A. Not necessarily, I guess it would be based on the facts of the case.

Q. So could you follow the instructions I give you?

A. Yes.

Q. Can you look at the facts of the individual case as it's presented to you?

A. Yes.

Q. Can you consider the full spectrum, whether it's a bad conduct discharge, forfeitures, whatever it may be, or follow the law as it is today?

A. Yes.

The Government challenged 1st Lt BM for "at the very least, implied bias" and trial defense counsel objected to the challenge. After hearing argument from counsel, the military judge put the following analysis on the record:

> MJ: With regard to the challenge for cause of First Lieutenant [BM], I've considered the standard for both actual and implied bias. The test for actual bias of court members is whether any bias is such that the court members will not yield to the evidence presented or the military judge's instructions. Having observed the member's demeanor, and having had an opportunity to assess the credibility, in response to the question posted, I do find actual bias. He did say that he would *not* consider the 12 months. However, when questioned, I agree. He agreed that he *might* consider all the facts. But then looking at his demeanor and the way he hemmed and hawed, if you will, when he was being asked those things, the test for implied bias is objective. When asked whether in the eyes of the public the challenged member's circumstances do injury to the perception or impair appearance of fairness in the military justice system, i.e. whether the members in the same position as a member whose impartiality is challenged would be prejudiced and biased. Implied bias is viewed through the eyes of the public and focuses on perception or appearance of fairness of the military justice system.
>
> Having observed the member's demeanor, and having had the opportunity to assess the member's credibility and responses to

> the questions posed, while I believe there is actual bias, I definitely believe that there is an implied bias. I do find that through the eyes of the public, Lieutenant [BM]'s participation as a court member in this case does meet the standard of implied bias.

> Although Lieutenant [BM] at the times indicated that he would consider all of the facts, he repeatedly said that he would have difficulty or could not give a 12-month sentence in the case based solely on the evidence submitted.

> So therefore, I am going to grant the government's request that First Lieutenant [BM] be stricken for cause. Although I will admit, it was close.

(Emphasis added).

### 2. Law

A military judge's decision on a challenge for cause is reviewed for a "clear abuse of discretion." *United States v. Quintanilla*, 63 M.J. 29, 35 (C.A.A.F. 2006) (internal quotation marks and citation omitted). "An abuse of discretion occurs if the military judge's findings of fact are clearly erroneous or if the decision is influenced by an erroneous view of the law. A military judge's ruling on a challenge for cause is given great deference." *Id.* (internal quotation marks and citations omitted).

"[A] panel member shall be excused for cause when the member should not sit 'in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.'" *Id.* at 36 (quoting R.C.M. 912(f)(1)(N)).

"The test for actual bias is whether any bias is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (internal quotation marks and citation omitted).

For implied bias challenges, we provide less deference than abuse of discretion, but more deference than de novo review. *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (citation omitted). "In the course of reviewing the military judge's ruling on a challenge for cause, it is appropriate to recognize the military judge's superior position to evaluate the demeanor of court members." *Quintanilla*, 63 M.J. at 35 (internal quotation marks and citation omitted). "Although it is not required for a military judge to place his or her implied bias analysis on the record, doing so is highly favored and warrants increased deference from appellate courts." *Dockery*, 76 M.J. at 96 (citation omitted).

"R.C.M. 912(f)(1)(N) applies to both implied and actual bias." *Dockery*, 76 M.J. at 96 (citation omitted). "Under this provision, a member who has 'an inelastic opinion concerning an appropriate sentence for the offenses charged' may be challenged." *Quintanilla*, 63 M.J. at 36 (quoting R.C.M. 912(f)(1)(N),

Discussion) (additional citation omitted). Additionally, the military judge should ask "the critical questions that might fill any implied bias gaps left by counsel." *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

"Implied bias exists when most people in the same position as the court member would be prejudiced. It is evaluated objectively under the totality of the circumstances and through the eyes of the public, reviewing the perception or appearance of fairness of the military justice system." *Dockery*, 76 M.J. at 96 (internal quotation marks and citations omitted). Central to that "objective test is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel." *Id.* (internal quotation marks and citation omitted). "While cast as a question of public perception, this test may well reflect how members of the armed forces, and indeed the accused, perceive the procedural fairness of the trial as well." *Peters*, 74 M.J. at 34.

If a military judge erroneously grants a government challenge for cause, and the error is not a constitutional error, then the appellant must demonstrate prejudice. *Dockery*, 79 M.J. at 99. An appellant must show that the panel that ultimately sentenced him was biased or created substantial doubt as to the court-martial's legality, fairness, and impartiality. *See id.* Additionally, an appellant suffers no prejudice where he cannot demonstrate that the ruling had an "impact on the defense's right to exercise a peremptory challenge," *Quintanilla*, 63 M.J. at 37, or that any of the members who sat on the panel "should have been disqualified," *Dockery*, 76 M.J. at 99 (internal quotation marks and citations omitted).

### 3. Analysis

Here, the military judge's analysis for both actual and implied bias was based on erroneous facts. Contrary to the military judge's recitation of the facts, 1st Lt BM never said that he would not consider 12 months of confinement. In fact, in response to the military judge's question, he joined the rest of the venire in affirmatively responding that he would follow the military judge's instruction to consider the full range of punishments, from no punishment, up to the maximum punishment. Additionally, 1st Lt BM did not say that he "might consider" all the facts. Instead, he clearly stated that he would consider all the facts and follow the military judge's instructions.

As to the issue of actual bias, the military judge's reliance on incorrect facts led to an erroneous application of those facts to the law. There is nothing in the record to support the position that 1st Lt BM held any bias that would not yield to the evidence presented and the military judge's instructions. Accordingly, the military judge erred in finding actual bias and granting the challenge for cause using this basis.

As to the issue of implied bias, we also find that the military judge erred in granting the challenge. While the military judge stated on the record that he observed 1st Lt BM's demeanor, the military judge never described 1st Lt BM's demeanor. Although the military judge stated that he had an opportunity to assess 1st Lt BM's credibility, the military judge did not say what his opinion of 1st Lt BM's credibility was. Finally, although the military judge claimed 1st Lt BM "hemmed and hawed, if you will, when he was being asked those things," he did not explain what "hemmed and hawed" meant to him, in general or specifically in this situation.[6] Here, because the military judge did not place his implied bias analysis on the record, there is no increased deference from this court. Put plainly, there is nothing in the record as articulated by the military judge to demonstrate that keeping 1st Lt BM as a panel member would cause concern about a real or perceived potential for command influence in courts-martial or cause concern about the public's perception of fairness in having 1st Lt BM as part of the court-martial.

However, this does not end our analysis. Even with the court's findings as to the actual and implied bias, we are required, under both *Quintanilla* and *Dockery*, to ask three questions. First, did the military judge's erroneous ruling have an impact on Appellant's right to exercise a peremptory challenge? Second, of those members who sat on the panel, did any of them hold a bias against Appellant or should they otherwise have been disqualified? Third, of those members who sat on the panel, did their presence create substantial doubt as to the court-martial's legality, fairness, and impartiality? *See Dockery*, 76 M.J. at 98–99; *Quintanilla*, 63 M.J. at 36.

The first two questions are easily disposed of. We answer the first question in the negative. There is nothing before us to conclude that the military judge's excusal of 1st Lt BM had an impact on Appellant's right to exercise a peremptory challenge. Appellant had an opportunity to exercise a peremptory challenge and chose not to use it. As to the second question, Appellant does not allege that any of the members who sat on the panel held a bias against him or otherwise should have been disqualified. In fact, Appellant challenged no one for cause.

Finally, as to the third question—specifically, whether the presence of members who sat on the panel created substantial doubt as to the court-martial's legality, fairness, and impartiality—Appellant claims that 1st Lt BM's excusal prevented Appellant from having a fair and impartial panel and likely led to a "harsher" and "severe" adjudged sentence.

---

[6] While we recognize that the phrase "hemmed and hawed" is a colloquialism, we are unsure what it meant to this military judge or what actions or statements from the panel member were hemming and hawing.

Appellant's argument fails for two reasons. First, there is no evidence before us regarding how 1st Lt BM's absence prevented Appellant from having a fair and impartial panel. We would first have to find that there was an unfair and partial panel. We would then have to find that having 1st Lt BM on the panel would remedy the unfair and partial panel, thereby creating a fair and impartial panel. We simply cannot make those leaps and there is nothing in the record to support making them. Second, the focus of the voir dire questions with 1st Lt BM were whether he would consider 12 months of confinement as a possible sentence. Appellant did not need 1st Lt BM on his panel to prevent him from receiving 12 months confinement because Appellant only received three months of confinement. Finally, 1st Lt BM made clear that regardless of his thoughts about confinement as it related to marijuana use, he did not have the same thoughts as it related to a bad-conduct discharge.[7]

Accordingly, we find that Appellant was not prejudiced by the military judge's ruling to exclude 1st Lt BM from the panel.

## C. Severity of the Sentence

Appellant argues that his sentence was inappropriately severe in light of the criminal offenses, his record of service, and the matters presented in mitigation. As to the criminal offenses, Appellant argues that the drugs he used were "legal within the laws of his local jurisdiction" and that this should be considered as a matter in mitigation. Appellant also points out that he cooperated with law enforcement, that he pleaded guilty without the benefit of an agreement, and that he deployed to Afghanistan. Appellant specifically claims that the combination of confinement and a punitive discharge renders the sentence inappropriately severe.

### 1. Law

This court reviews sentence appropriateness de novo. *United States v. Baier*, 60 M.J. 382, 384–85 (C.A.A.F. 2005). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). Sentence appropriateness should generally "be judged by 'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*,

---

[7] We also note that at the conclusion of challenges, eight members were left. The members were randomly assigned numbers to determine the four who would hear Appellant's case because the convening authority did not authorize alternates to be empaneled. Even if 1st Lt BM had not been challenged for cause, Appellant cannot demonstrate that 1st Lt BM's name would have been among the first four chosen by the random number generator.

27 C.M.R. 176, 180–81 (C.M.A. 1959)). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 2. Analysis

Appellant faced a maximum punishment of a reprimand, forfeiture of two-thirds pay per month for 12 months, the possibility of a fine, reduction to the grade of E-1, confinement for 12 months, and a bad-conduct discharge. After listening to the evidence of the underlying criminal offenses as well as the matters in mitigation and aggravation, the panel sentenced Appellant to forfeiture of $1,256.00 of pay per month for three months, reduction to the grade of E-2, confinement for three months, and a bad-conduct discharge.

We have considered that Appellant deployed on behalf of the Air Force and the type of work he did; that he had served over four years on active duty; that he was awarded the Aerial Achievement Medal; that he was depressed; that he was reluctant to see mental health professionals; that he cooperated with law enforcement; and that he pleaded guilty. We have also compared all of this to the fact that Appellant illegally used drugs every day from December 2017 to December 2018 and January 2019 to mid-September 2019. While assigned to Ellsworth AFB, Appellant would drive from South Dakota to Colorado, just to get the drug. Once stationed in Nevada, where Appellant was still not lawfully permitted to use marijuana, he resumed using the drug daily after a short period of time and would also employ the assistance of his ex-girlfriend to obtain marijuana. Of more concern is that after he was caught using marijuana, Appellant did not stop using it until he was restricted to base.

Based on our individualized consideration of Appellant, his character, his service record, and the nature and seriousness of the offenses, we find the approved sentence is appropriate in this case.

### D. Trial Counsel's Sentencing Argument

Appellant contends that trial counsel, in his argument, "suggested" that Appellant was under the effects of marijuana "while working" as a sensor operator and there was no evidence to support such a "suggestion." Appellant further argues that "[s]uggesting that [Appellant]'s mind was 'messed up' while he was performing his duties likely made the members think that America's national security was at risk due to his marijuana use."

Appellant concedes that trial defense counsel did not object to trial counsel's argument.

### 1. Additional Background

As Appellant was providing a factual basis for his guilty plea, he explained to the military judge that he "would use [marijuana] to unwind after work, but [he] never went to work high." Additionally, in his unsworn statement, Appellant explained, "I never showed up to work while intoxicated. I did not let this affect my job performance." However, during sentencing argument, trial counsel stated:

> Now, in paragraph 10 of [the stipulation of fact], it talks about marijuana. And it's a Schedule I drug, and this is the evidence that you have before you, Members. In *voir dire*, we talked a lot about people's perceptions of marijuana and different views from society, and tendencies, but this is the actual evidence that you have. So, according to the instructions, this is what you consider. And here, it's a Schedule I drug, defined as by [sic] the federal [G]overnment as a drug with no currently accepted medical use, and a high potential for abuse. So, THC is the main constituent, and it talks about having a [psychoactive] effect. It literally messes with your mind. That is the point of it. That's one of the reasons that people take marijuana. And it's one of the reasons that Airman Murphy explained that he took marijuana. It can literally affect perception, and coordination, and may be responsible for impairments in learning, associative processes, and psychomotor behavior.
>
> Members, in the next Prosecution Exhibit, the Personal Data Sheet, you see there that the Air Force specialty code base is MQ-9 Sensor Operator. And throughout his evidence, he talks about what it is that he does. So, look at the effects of marijuana from Prosecution Exhibit 1, recognize that that is what this MQ-9 Sensor Operator was putting into his body every day for at least 20 months.

The military judge did not stop trial counsel's argument, nor did he provide any additional instructions specifically related to that argument. Although trial defense counsel did not object, he responded to trial counsel's argument:

> And you also have to look at the specific acts that [Appellant] committed; we're talked about using marijuana. There's no indication that he distro'ed marijuana; there's no indication that he introduced it onto base; there's no indication that he went in high to work. I understand that he is a sensor operator, but don't you believe that if there was evidence out there showing that he had actually showed up and it was affecting him day to day, we'd have evidence of that? But you don't have that in front of you.

**2. Law**

The issue of "improper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011) (citation omitted). As trial defense counsel did not object to the complained-of comments, we review the issue for plain error. *Id.* (citation omitted). To be entitled to relief, an appellant "must prove the existence of error, that the error was plain or obvious, and that the error resulted in material prejudice to a substantial right." *Id.* "In this context, material prejudice to the substantial rights of the accused occurs when an error creates an unfair prejudicial impact on the court members' deliberations." *United States v. Norwood*, 81 M.J. 12, 20 (C.A.A.F. 2021) (internal quotation marks, citations, and brackets omitted). The requirement contemplates a showing of a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* (internal quotation marks and citations omitted).

"When arguing for what is perceived to be an appropriate sentence, the trial counsel is at liberty to strike hard, but not foul, blows." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citations omitted). "It is appropriate for trial counsel—who is charged with being a zealous advocate for the Government—to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Id.* (citation omitted).

What is not appropriate is an argument "aimed at inflaming the passions or prejudices of the court members." *Id.* (internal quotation marks and citations omitted). Additionally, when a trial counsel has no justifiable basis for his argument that an accused's membership in a certain military unit (as opposed to any other organization) was an aggravating circumstance, but still argues it, we will find trial counsel's comments improper. *United States v. Collins*, 3 M.J. 518, 520–21 (A.F.C.M.R. 1977). Put more succinctly, "absent evidence an accused's crimes in any way affected his duty[,] such argument is impermissible." *United States v. Gruninger*, 30 M.J. 1142, 1143 (A.F.C.M.R. 1990) (emphasis removed). We have described this as "tantamount to black letter law" and found that doing so "is simply not allowed unless there is some connection between an accused's duty position and the commission of the crime." *United States v. Rhodes*, 64 M.J. 630, 632 (A.F. Ct. Crim. App. 2007), *aff'd*, 65 M.J. 310 (C.A.A.F. 2007).

### 3. Analysis

Our review of trial counsel's argument troubles us. We find that trial counsel had no justifiable basis for his suggestion that Appellant's job category, as a MQ-9 Sensor Operator, was a matter in aggravation. In fact, the record before us provides the opposite—that Appellant never went to work high or while feeling the effects of marijuana. As there was no evidence that Appellant's

crimes in any way affected his duty, such argument is impermissible. Therefore, we find error. Because this error is "tantamount to black letter law," *Rhodes*, 64 M.J. at 632, we find the error obvious.

Therefore, the remaining question is whether this error created an unfair prejudicial impact on the court members' deliberations—whether Appellant has shown "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Norwood*, 81 M.J. 12, 20 (C.A.A.F. 2021) (internal quotation marks and citations omitted). Here, we simply cannot make such a finding.

First, Appellant has not demonstrated that trial counsel's comment created any unfair prejudicial impact on the members' deliberations. To the contrary, trial defense counsel adeptly responded to trial counsel's brief comments on this topic. Although trial defense counsel did not object to trial counsel's reference to Appellant's duties as an MQ-9 sensor operator, trial defense counsel highlighted the evidence before the panel members. Trial defense counsel explained to the panel that "there's no indication that [Appellant] went in high to work;" and that "he is a sensor operator, but don't you believe that if there was evidence out there showing that he had actually showed up and it was affecting him day to day, we'd have evidence of that? But you don't have that in front of you."

Second, Appellant has not provided any evidence that, but for trial counsel's comment, the sentence would have been different. As noted in his claim for sentence severity, Appellant faced a maximum punishment of a reprimand, forfeiture of two-thirds pay per month for 12 months, the possibility of a fine, reduction to E-1, confinement for 12 months, and a bad-conduct discharge. During sentencing argument, trial counsel asked the panel members to sentence Appellant to "at least reduction to E-1, a bad-conduct discharge, and confinement for at least eight months." Ultimately, the panel sentenced Appellant to forfeiture of $1,256.00 pay per month for three months, reduction to the grade of E-2, confinement for three months, and a bad-conduct discharge.

Based on the discrepancy between trial counsel's recommended sentence and the sentence imposed, we simply cannot find that trial counsel's argument impacted the court members' deliberation. Put another way, Appellant has not shown a reasonable probability that, but for the error, the outcome of the proceeding would have been different. This conclusion is further supported by our individualized consideration of the record and our conclusion that the sentence imposed was appropriate in this case.

Thus, we do not find that the error resulted in material prejudice to a substantial right and we do not grant relief.

**E. Timeliness of Appellate Review**

This case was docketed with this court on 22 November 2019. Appellant requested and was granted six extensions of time prior to filing his assignments of error on 18 August 2020. The Government filed its answer on 17 September 2020. Neither at the time of filing his appeal nor during the pendency of his appeal did Appellant file a demand for speedy appellate review.

The delay in rendering this decision after 22 May 2021 is presumptively unreasonable. However, we determine there has been no violation of Appellant's due process right to a speedy appellate review.

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the United States Court of Appeals for the Armed Forces (CAAF) established a presumption of facially unreasonable delay when a Court of Criminal Appeals does not render a decision within 18 months of docketing. *Id.* at 142. Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533).

Concerning prejudice, the CAAF identified three types of interests for prompt appeals: (1) prevention of oppressive incarceration; (2) minimizing anxiety and concern; and (3) limitation of the possibility of impairment of the appellant's ability to present a defense at a rehearing. *Moreno*, 63 M.J. at 138–39 (citations omitted). In this case, we find no oppressive incarceration nor impairment of the defense at a rehearing because Appellant has not prevailed in his appeal. *See id.* at 140. As for anxiety and concern, the CAAF has explained that "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has articulated no such particularized anxiety in this case, and we discern none.

There are several factors explaining this delay. First, Appellant took approximately nine months from the docketing of this case to file his assignments of error. Second, Appellant asserted five errors, the careful consideration of which has resulted in a 20-page opinion from the court. Third, as described above, we initially remanded this case but later withdrew that opinion when we granted the Government's reconsideration motion. We then continued with

our Article 66 review. We do not find egregious delay here, especially in light of the fact much of the initial delay in this case was at Appellant's behest.

Where, as here, Appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We do not find such egregious delays here. Appellant has neither demanded speedy appellate review nor asserted that he is entitled to relief for appellate delay. Accordingly, we do not find the delay so egregious as to adversely affect the perceived fairness and integrity of the military justice system. *See id.*

Recognizing our authority under Article 66(d), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court