*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, GROSS, and DALY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Chad M. KACZKOWSKI**
Information System Technician Submarines First Class Petty
Officer (E-6), U.S. Navy
*Appellant*

**No. 202300045**

_____

Decided: 3 July 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Rachel E. Trest

Sentence adjudged 27 October 2022 by a general court-martial convened at Region Legal Service Office Southeast, Mayport, Florida, consisting of officer and enlisted members, with sentencing by the military judge. Sentence in the Entry of Judgment: confinement for eight years, reduction to E-1, and a dishonorable discharge.[1]

---

[1] Appellant was credited with two days pretrial confinement credit.

For Appellant:
*William E. Cassara, Esq.*
*Lieutenant Zoe R. Danielczyk, JAGC, USN*


*For Appellee:*


*Lieutenant Michael A. Tuosto, JAGC, USN*
*Lieutenant Colonel James A. Burkart, USMC*

Judge GROSS delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Judge DALY joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

GROSS, Judge:

A general court-martial composed of members with enlisted representation convicted Appellant, contrary to his pleas, of one specification of attempted sexual assault of a child and two specifications of attempted sexual abuse of a child involving indecent communication in violation of Article 80, Uniform Code of Military Justice (UCMJ).[2] He elected to be sentenced by the military judge, who adjudged a sentence of confinement for eight years, reduction to pay grade E-1 and a dishonorable discharge.

Appellant asserts six assignments of error (AOEs) which we summarize as follows: (1) whether the evidence is legally and factually sufficient to support Appellant's convictions; (2) whether Appellant's convictions for specifications 1 and 2 are an unreasonable multiplication of charges; (3) whether the military judge abused her discretion in denying the Defense challenges for cause of three members; (4) whether the military judge abused her discretion denying a Defense requested instruction; (5) whether trial counsel committed prosecutorial misconduct by offering perjured testimony; and (6) whether Appellant's trial defense counsel were ineffective by failing to object to improper conduct

---

[2] 10 U.S.C. 880.

by detectives investigating the case.[3] We find merit in Appellant's second AOE, and take action in our decretal paragraph by dismissing Specification 2 of The Charge (attempted sexual abuse of a child involving indecent communications). Having considered the rest of Appellant's AOEs, we have determined that the remaining findings and sentence are correct in law and fact, and that no error materially prejudicial to Appellant's substantial rights occurred.[4]

# I. BACKGROUND

Appellant used an online application, Whisper, to communicate with two individuals "Maddy" and "Re-becky" in February and March of 2021. Whisper is an anonymous communication platform where users can chat with each other. The application allows users to select a gender and age range, from 15-17 years old to 45+. Users can communicate with each other either in public posts or in private conversations called "whispers." A user can communicate with any other person on the application unless the user selects the 15-17 years old age range. Users in this category can only interact privately with other users in the same age range. While this is meant to protect minors who are on the platform, there is no vetting process, and any user can enter any age for their profile.

"Maddy" was a persona used by Special Agent (SA) Mike of the Federal Bureau of Investigation (FBI). The profile for "Maddy" indicated she was a female in Jacksonville, FL without a specified age. On 4 February 2021, "Maddy" posted a public whisper on a generic background to the group "single teens wanting a relationship." Appellant, using the user profile "Pizza_Sad," sent "Maddy" a private message, saying, "[g]ood afternoon baby girl!" He then asked how old "Maddy" was and, when she told him she was 14, he asked her to send him a picture.[5]

Appellant then sent "Maddy" a picture of himself smiling without a shirt on and exposing his bare chest. He then again asked "Maddy" for a picture of herself, and SA Mike then sent Appellant a picture of a co-worker at the FBI. The picture was altered by using a filter that superimposed cat ears and altered facial features. The two continued talking, with Appellant telling

---

[3] AOEs 5 and 6 are raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). Having considered the matters raised by Appellant we find these AOEs to be without merit and decline to grant relief. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

[4] Articles 59 & 66, Uniform Code of Military Justice, 10 U.S.C. §§ 859, 866.

[5] Pros. Ex. 1 at 3.

"Maddy" that he was "[l]ooking for female friends to see where it goes."[6] Appellant then asked "Maddy" "[w]hat do you do? Middle or high school?" to which "Maddy" responded that she was in 8th grade.[7] Appellant next asked "[y]ou like your men older?" and asked if she had been sexual with her ex-boyfriend.[8] The conversation then turned explicitly sexual with Appellant informing "Maddy" that he slept naked, telling her that he was masturbating, and saying that he was "horny."[9] Throughout the conversation, "Maddy" told Appellant that she was 14 on several occasions.

Appellant continued to use sexual language and innuendo with "Maddy," sending her pictures of himself with his tongue out, describing his various body parts as being large, and telling her "I'd break you" in a "dirty way."[10] The conversation between Appellant and "Maddy" ultimately tapered off; however, Appellant continued to use Whisper and within a month of the above communications, he encountered "Re-becky."

"Re-becky" was the online alias of Detective White of the Camden County Sheriff's Department (CCSD). Detective White identified "Re-becky" on the app as being a female between the ages of 36 and 44. On 10 March 2022 Appellant then initiated a private chat with "Re-becky," referring to her as "baby girl."[11] He asked her how old she was, and when she replied that she was 14 years old, he continued the conversation.

Appellant asked "Re-becky" for a picture, and she told him to send one first because she was the girl in the conversation. Appellant then sent "Re-becky" a picture of his face with his tongue sticking out. "Re-becky" replied, "I don't send nudes," to which Appellant responded that he was not expecting them.[12] Detective White then sent Appellant a picture of a colleague that had been altered with a digital application to make her appear younger. Appellant responded, "[b]eautiful baby girl! Guessing you like your guys older?"[13]

Appellant then continued the conversation, asking "Re-becky" how many older men she had been with and whether she was on birth control. He then

---

[6] Pros. Ex. 1 at 7.

[7] Pros. Ex. 1 at 8.

[8] Pros. Ex. 1 at 8.

[9] Pros. Ex. 1 at 8.

[10] Pros. Ex. 1 at 26-27.

[11] Pros. Ex. 5 at 1.

[12] Pros. Ex. 5 at 6-7.

[13] Pros. Ex. 5 at 8-9.

told "Re-becky" that he was "edging" and explained that "[e]dge is where you get to the brink of an orgasm but don't actually c**."[14]

"Re-becky" asked Appellant where he lived, and he responded that he lived on Naval Submarine Base Kings Bay, Georgia. When she told him she lived near him, he offered to drive to her house. Appellant offered to shower with "Re-becky" but she expressed concern about having Appellant come to her house because her neighbors might notice.

The two continued to chat throughout the day. Appellant was initially non-committal about his plans with "Re-becky" and she ultimately told him that she was uncomfortable meeting if he did not tell her what his plan was. When it appeared that "Re-becky" was calling off their meeting, Appellant told her he did not want to set expectations too early. As the two discussed what would happen if they met, Appellant asked "Re-becky": "[y]ou said you're on birth control?" When she said "Yes" he asked, "You like that c** deep in your p****?"[15]

The two made plans to meet on 11 March 2022 with Appellant saying "[b]aby girl, it's on tomorrow. You wanna f***, we can. You wanna stop at oral, we will."[16] Throughout the conversation, "Re-becky" sent reminders that she was 14 years old; however, Appellant continued to engage with her.

"Re-becky" asked Appellant to bring condoms and a lubricant; however, Appellant told her he had a vasectomy, and that he didn't need to bring lubricant because she'd "get wet enough."[17] Throughout the night, "Re-becky" tried to get Appellant to meet up that evening, but Appellant insisted on meeting the following morning. He told her that they would find a parking lot to have sex, and that he had tinted windows so that people wouldn't be able to see them.

On the morning of 11 March 2022, Appellant confirmed the plan to meet up with her. As he approached the meeting place, Appellant believed he saw a police car, and told "Re-becky" that they needed to change the meeting place to a parking lot across the street. He then drove to that parking lot and was subsequently taken into custody by law enforcement. Appellant was driving a 2007 Chevrolet Tahoe with dark tinted windows and the rear seats folded down.

After being detained, investigators with the Naval Criminal Investigative Service (NCIS) and CCSD read Appellant his rights under Article 31(b),

---

[14] Pros. Ex. 5 at 17.

[15] Pros. Ex. 5 at 45.

[16] Pros. Ex. 5 at 51.

[17] Pros. Ex. 5 at 56.

UCMJ, and interrogated him. During questioning, Appellant admitted that he was the owner of the "Pizza_Sad" username, that he had been chatting with "Re-becky," that "Re-becky" had told him that she was 14, and that he had driven to meet up with her. Appellant claimed, however, that he did not really believe that "Re-becky" was 14 years old, and he also claimed that he did not intend to have sex with her.

Appellant said that this was the first time meeting up with anyone, and that "[m]aybe it felt like a little bit of a rush."[18] While Appellant insisted that he was not one to usually have sex with someone at the first meeting, he admitted that having sex with "Re-Becky" was not off the table.

Based on his actions with "Maddy" and "Re-becky," the Government charged Appellant with two specifications of attempted sexual abuse of a minor by indecent communications and one specification of attempted sexual assault of a minor. Appellant elected to be tried by members with enlisted representation.

Prior to findings, Appellant requested a tailored findings instruction advising the members that "good military character evidence" is not admissible for the charged offenses and that the members should not speculate as to why they had not heard such evidence.[19] The military judge denied Appellant's request. The court-martial convicted Appellant of all specifications of the charge, and in accordance with his election, the military judge sentenced Appellant for each of the specifications. Additional facts necessary to resolve Appellant's AOEs are discussed below.

## II. DISCUSSION

### A. The evidence is legally and factually sufficient.

#### 1. The convictions are legally sufficient

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[20] In conducting this analysis, we must "draw every reasonable inference from the evidence

---

[18] Appellate Ex. XXXVI at 8.

[19] Appellate Ex. XIX.

[20] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014).

of record in favor of the prosecution."[21] "As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction."[22]

Appellant asserts that his conviction for attempted sexual assault of a child is legally insufficient because the Government failed to prove that Appellant was not entrapped. For the reasons set forth below, we disagree. We have also considered, as we are required to do in every case, whether the remaining specifications are legally sufficient and find that a reasonable fact finder could have found all of the elements of each of the specifications proven beyond a reasonable doubt.

At trial, as the military judge instructed the members, the Government was required to prove:

(1) That on or about 12 March 2021, the accused did certain overt acts, that is traveled to meet a person who the accused believed had not attained the age of 16 years for the purpose of committing a sexual act;

(2) That the acts were done with the specific intent to commit the offense of sexual assault of a child by penetrating a child's vulva with his penis;

(3) That the acts amounted to more than mere preparation; that is, they were a substantial step and a direct movement towards the commission of the intended offense; and

(4) That such acts apparently tended to bring about the commission of the offense of sexual assault of a child; except for a circumstance unknown to appellant which prevented completion of the offense.

Because the military judge found that the evidence had raised the affirmative defense, she also instructed the members that the Government had the burden to prove that the accused was not entrapped.

Rule for Courts-Martial 916(g) provides that "[i]t is a defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense."

The Defense has the initial burden of going forward to show that a Government agent originated the suggestion to commit the crime. Once the Defense has come forward, as here, the burden then shifts to the Government to prove

---

[21] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (internal citation and quotation marks omitted).

[22] *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (cleaned up) (internal citations omitted).

beyond a reasonable doubt that the criminal design did not originate with the Government or that the accused had a predisposition to commit the offense prior to first being approached by Government agents.[23]

The first element of entrapment is inducement, which is "government conduct that creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense."[24]

We find Appellant's convictions legally sufficient. Specifically, with regard to Specification 1, we find that the Government presented sufficient evidence to meet every element and to disprove Appellant's entrapment defense. As we will discuss more fully below in assessing for factual sufficiency, there was at least some evidence to show that Appellant undertook the act of driving to meet with "Re-becky," a person he believed had not attained the age of 16, with the specific intent of engaging in sexual intercourse with her. The evidence also showed that Appellant was predisposed to commit the offense of sexual assault of a child.

While Appellant makes much of the fact that he told investigators that he did not actually believe that "Re-becky" was 14 years old, the members were not required to believe Appellant's protestations, and were free to consider other evidence in making a determination on the sincerity of his beliefs. Specifically, among other things, "Re-becky" told Appellant multiple times that she was 14 years old and that she was in school. She also discussed her mother's absence and the fact that she had nosey neighbors who would notice Appellant's car. Appellant's texts show he accepted these statements and still wanted to engage in sex with "Re-becky."

Additionally, there was sufficient evidence before the members that Appellant was predisposed to commit the offense of sexual assault of a child. After "Re-becky" told Appellant that she was 14 years old, he almost immediately asked for a picture of her. When she requested he send one first, Appellant chose to send her a picture of himself with his tongue out. It was after this picture choice, with its apparent sexual undertones, that Detective White wrote, "I don't send nudes."[25] While it is true that Detective White as "Re-becky" pushed Appellant to describe what they would do when they met, seeking confirmation that Appellant wanted to engage in a sexual act; when "Re-becky" seemed to hesitate about meeting Appellant would re-engage with her. Appellant repeatedly sought to assure "Re-becky" that he wanted to have sex

---

[23] *United States v. Whittle,* 34 M.J. 206, 208 (C.A.A.F. 1992).

[24] *United States v. Hall*, 56 M.J. 432, 436 (C.A.A.F. 2002) (cleaned up).

[25] Pros. Ex. 5 at 6-7.

with her. We find therefore that Appellant's actions showed that he was not induced to commit the offense.

We are similarly convinced that the Government introduced sufficient evidence to meet the "low bar" for legal sufficiency for specifications two and three of the Charge.[26]

### 2. The evidence is factually sufficient

Our power to review cases for factual sufficiency is found in Article 66, UCMJ. Historically, our duty to review for factual sufficiency was to conduct a de novo review of the case.[27] Under the prior version of the law, we were charged with affirming a conviction in all cases only after "weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of an appellant's guilt beyond a reasonable doubt.[28] That changed for offenses committed after 1 January 2021, when Congress amended Article 66. As we have previously stated, "to trigger factual sufficiency review under the present Article 66(d)(1)(B), Congress requires two circumstances be present: (1) a request of the accused; and (2) a specific showing of a deficiency in proof."[29] In conducting our review, we are to give "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence."[30] We may not "dismiss, set aside, or modify [a] finding, or affirm a lesser finding" unless we are "clearly convinced that the finding of guilty was against the weight of the evidence."[31]

In *Harvey*, we said that to trigger this review, "an appellant must identify a weakness in the evidence admitted at trial to support an element (or more than one element) and explain why, on balance, the evidence (or lack thereof) admitted at trial contradicts a guilty finding."[32] Once an appellant has met the

---

[26] *United States v. Goings*, 72 M.J. 202, 216 n.19 (C.A.A.F. 2013).

[27] *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017).

[28] *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also* Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2017) ("In considering the record, the Court may weigh the evidence, judge the credibility of witness, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.").

[29] *United States v. Harvey*, 83 M.J. 685, 691 (N-M Ct. Crim. App. 2023), *rev. granted,* __ M.J. __, No. 23-0239/NA, 2024 CAAF LEXIS 13 (C.A.A.F. Jan. 14, 2024).

[30] Article 66(d)(1)(B)(ii), UCMJ.

[31] Article 66(d)(1)(B)(iii), UCMJ.

[32] *Harvey*, 83 M.J. at 691.

threshold to trigger our review, "this Court will weigh the evidence in a deferential manner to the result at trial. If we are clearly convinced that, when weighed, the evidence (including the testimony) does not support a conviction, we may set it aside."[33]

We find that while Appellant has made a showing sufficient to trigger our factual sufficiency analysis, he has not met his burden to show that any of his convictions are factually insufficient. Review of the evidence, which included text messages, pictures, and testimony of law enforcement, shows that Appellant's convictions are not clearly against the weight of the evidence. Appellant initiated contact with two individuals online, and when they told him that they were 14 years old, Appellant engaged in conversations with them that were sexual in nature.

Although Appellant claims that the evidence is contradictory regarding his belief as to both "Re-becky's" and "Maddy's" age, the contradictions stem almost exclusively from Appellant's self-serving statements to law enforcement. The panel was not required to give weight to Appellant's claim that he did not really think that "Re-becky" was underage, and neither do we. A reasonable trier of fact could easily have found that when Appellant was told that both "Re-becky" and "Maddy" were 14, he believed what he was told, and that when he traveled to meet "Re-becky" his intent was to do exactly what he said – to have unprotected sex with her.

Further, we are convinced, as were the members, that Appellant was not entrapped. In the case of "Maddy," which occurred prior to his conversations with "Re-becky," Appellant responded to a non-sexual post in a group titled "single teens wanting a relationship" despite the fact that he was 37 years old.[34] He then sent a picture of himself, shirtless, to a supposed 14-year-old girl, all without being approached, asked, or cajoled by law enforcement.

Likewise, with respect to "Re-becky," Appellant's actions evince someone who was willing to engage in sex with a child. Every time "Re-becky" presented a barrier to their meeting, Appellant provided assurances that he could be discreet with her. A person not inclined to engage in sex with a child or communicate indecent language with a child, would have disengaged numerous times with both personas rather than continuing to have sexual banter with purported children.

Finally, we note that while we are obligated to follow the new standard set forth for claims of factual insufficiency, even assuming that we were operating

---

[33] *Id.* at 693.

[34] Pros. Ex. 1 at 1-3.

under the de novo standard as it existed for offenses prior to January 2021, we would affirm Appellant's convictions. This is not a case where the evidence was a close call, and even if we took a "fresh, impartial look at the evidence" we would be convinced beyond a reasonable doubt that Appellant was guilty as charged.[35]

## B. Under the unique circumstances of this case, Specifications 1 and 2 are an unreasonable multiplication of charges.

We have previously laid out the facts and circumstances surrounding Appellant's interactions with "Re-becky" from 11-12 March 2021. Prior to trial, the Government filed its notice of intent to use evidence of Appellant's indecent communications with "Re-becky" (Specification 2) to prove Appellant's motive, intent, preparation, plan, and absence of mistake with respect to the offense of attempted sexual assault of a child (Specification 1) under Military Rule of Evidence (Mil. R. Evid.) 404(b).[36] The Defense objected, and the military judge took evidence, heard argument and issued a ruling. The military judge ruled that the evidence was admissible, finding in relevant part that the language encapsulated in specification 2 was "res gestae" of the offense of attempted sexual assault of a child in Specification 1 of The Charge.[37] The concept of unreasonable multiplication of charges reflects the Presidentially-issued directive that "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."[38] "[U]nreasonable multiplication of charges concerns 'those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion.'"[39] In evaluating a claim of unreasonable multiplication of charges, courts review the factors set forth in *Quiroz*.[40]

In *Quiroz* this court held that in evaluating claims of unreasonable multiplication of charges, courts should consider the five factors:

> 1. Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?

---

[35] *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[36] Appellate Ex III at 7.

[37] Appellate Ex. XVIII at 7-8.

[38] Rule for Courts-Martial 307(c)(4).

[39] *United States v. Forrester*, 76 M.J. 389, 395 (C.A.A.F. 2017) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (CA.A.F. 2001).

[40] *United States v. Quiroz*, 55 M.J. 334.

2. Is each charge and specification aimed at distinctly sepa-rate criminal acts?

3. Does the number of charges and specifications misrepre-sent or exaggerate the appellant's criminality?

4. Does the number of charges and specifications *unfairly* in-crease the appellant's punitive exposure? and

5. Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?[41]

The CAAF then reviewed the decision and affirmed the test set forth by this Court, except finding that our decision erroneously looked at whether an Appellant's punishment was *unfairly* increased rather than whether the increase was *unreasonable.*[42]

Here, on balance, we find that the *Quiroz* factors weigh in favor of Appellant. Appellant did not object at trial, so this factor weighs in favor of the Government. Crucial to our determination regarding factor two is the military judge's ruling regarding the admissibility of specification two to prove specifi-cation one. Here, the military judge permitted the Government to argue the facts underlying specification two as "res gestae" of his attempted sexual as-sault of a child, saying that his messages were "inextricably related"[43] to the attempted sexual assault and citing to our decision in *United States v. Felix.*[44]

While we are not bound by the military judge's finding that the acts were inextricably linked under *Felix*, the finding is instructive as to how the parties at trial and the court considered the evidence. Here, the trial counsel argued repeatedly that the evidence of Appellant's communications with "Re-becky" was evidence of his intent when he travelled to meet her, and the military judge ruled that the members could consider Appellant's language for its tendency to show Appellant's plan, intent and motive, and to rebut the defense of en-trapment. In a case involving inchoate crimes where the primary dispute be-tween the parties is whether the Appellant specifically intended to engage in sexual intercourse with "Re-becky" the language in the text messages was strong evidence of a critical element of both offenses. This factor therefore weighs in favor of Appellant.

---

[41] *United States v. Quiroz,* 53 M.J. 600, 607 (N-M Ct. Crim. App. 2000).

[42] *United States v. Quiroz*, 55 M.J. at 338-339.

[43] Appellate Ex. XVIII at 7-8.

[44] No. 201800071, 2019 CCA LEXIS 258 (N-M. Ct. Crim. App. June 19, 2019).

Similarly, the third factor favors Appellant in light of the procedural posture at trial. While we would not fault the Government if it had proceeded with both specifications based on contingencies of proof, we find that Appellant's convictions for two specifications that were inextricably related for a course of conduct that occurred in less than 24 hours unreasonably exaggerates his criminality. We acknowledge that this factor is a close call based on the fact that Appellant's conviction for attempted sexual assault of a child required proof of Appellant's travel and his conviction for attempted sexual abuse of a child through indecent language did not. But the fact that the interactions between Appellant and "Re-becky" were so short and interrelated as to Appellant's intent sways this factor in favor of Appellant.

Appellant asserts that this case is similar to *United States v. Garner*.[45] While *Garner* is not "on all fours" with Appellant's case because there the accused did not actually travel to engage in sex with a minor, it is instructive. There, we held, that "both offenses were achieved, at least in part, through use of the exact same explicit language."[46]

The Government urges us to rely upon *United States v. Barraza*, to affirm the convictions, however that case is distinguishable.[47] In *Barraza*, we denied the appellant's claim of unreasonable multiplication of charges in part because "the communications in [that] case went well-beyond that necessary to arrange a meeting or even to communicate he was interested in sex, both in terms of the *time span over which the communications continued* and the explicit, repeated nature of his lewd suggestions."[48] Here, there was no extensive time period during which Appellant messaged "Re-becky" and both specifications were committed in less than 24 hours.

As to the fourth factor we likewise find that Appellant's conviction for two specifications occurring in such a short period of time and when the military judge found them to be inextricably related to each other unreasonably raises Appellant's punitive exposure. On this factor, the CAAF has directed that our inquiry be one of reasonableness.[49] While Appellant was ultimately sentenced by the military judge who directed the sentences for all specifications to run concurrently, upon conviction Appellant was facing a maximum punishment of confinement for 20 years for specification 1, and 15 years each for specifications

---

[45] 67 M.J. 734 (N-M. Ct. Crim. App. 2009)

[46] *Id.* at 741.

[47] No. 201400210, 2015 CCA LEXIS 63 (N-M. Ct. Crim. App. Feb. 26, 2015).

[48] *Id.* at *5 (emphasis added).

[49] *Quiroz*, 55 M.J. at 338.

2 and 3. We find that Appellant's conviction for two specifications and the possibility of an additional 15 years confinement for offenses that were committed so close in time and which the military judge ruled were inextricably linked was unreasonable for these offenses.

Finally, Appellant does not allege, and we have found no evidence of, prosecutorial overreach in this case. This factor therefore weighs in favor of the Government.

We note that our decision is limited solely to the facts of this case and the unique circumstances presented here. Given that three of the factors weigh in favor of Appellant, and the Government was permitted to argue that both Specifications 1 and 2 were linked as the same course of conduct, we find merit in Appellant's AOE. Accordingly, we will dismiss Specification 2 to The Charge.

**C. The military judge did not err in denying defense challenges for cause.**

Appellant challenged LT Bravo for implied bias on the basis that his wife had completed a psychiatry residency and had told him that she had handled cases of child sexual abuse and that she found them difficult. When questioned about his wife's experiences dealing with child sexual assault abuse victims, LT Bravo stated that she never discussed specifics of cases with him, and that he believed he could be fair and unbiased because that was what was expected of him in the case.

The military judge denied the Defense challenge, stating, "[h]e appeared to take his duty seriously. He appeared impartial, unbiased, sincere, and fair in his answers … And I am confident that the public perception and appearance of the legality, impartiality, and fairness is not compromised in having Lieutenant [Bravo] as part of this panel."[50]

Appellant's next challenged Culinary Specialist Senior Chief (CSCS) Charlie for both actual and implied bias. During group voir dire, CSCS Charlie stated he could not think of a reason that someone might not take the stand if they were innocent. When questioned about this response during individual voir dire, CSCS Charlie said that he understood there were reasons a person might not and that he would not hold it against Appellant if Appellant chose not to testify. Also, during individual voir dire, CSCS Charlie stated that he understood that other people he had served with believed that if an accused chose not to speak at nonjudicial punishment that the accused must be lying, however CSCS Charlie said that he did not personally believe that.

---

[50] R. at 463.

The military judge found no actual bias based on his answers, and in discussing implied bias found him to be sincere in his responses, and said, "[s]o, I'm confident that the public perception, appearance of the legality, the impartiality, and fairness is not compromised in having Senior Chief [Charlie] as part of this panel."[51]

Appellant's challenge to Electrician's Mate (Nuclear) Chief Petty Officer (EMNC) Juliet was also for actual and implied bias. Appellant's basis for challenge was the fact that EMNC Juliet had children whom he did not allow to use applications like Whisper because he believed that the applications were dangerous and that there was a bunch of "garbage" on such applications.[52]

The military judge denied the challenge finding no actual or implied bias based on EMNC Juliet's statements, saying that she found his answers to be thoughtful, and that he appeared to be impartial, unbiased, and sincere, and once again considered the public perception of the fairness of the trial in denying the challenge. In each of the military judge's denials of the Defense challenges, the military judge stated that she considered the mandate to liberally grant Defense challenges.

Review of a military judge's rulings on challenges of a member for implied bias is pursuant to a standard that is "less deferential than abuse of discretion, but more deferential than de novo review."[53] The CAAF has instructed that "where a military judge considers a challenge based on implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare."[54]

We find that the military judge conducted a full and thorough review of the voir dire of each challenged member, acknowledged the liberal grant mandate, recognized the correct standard, and applied the standard correctly. In doing so, we take into account the CAAF's admonition that "what might appear a close case on a cold appellate record, might not appear so close when presented from the vantage point of a military judge"[55] and note that on the record before

---

[51] R. at 471.

[52] R. at 342.

[53] *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (citing *United States v. Peters*, 74 M.J. 31, 33 (C.A.A.F. 2015)).

[54] *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

[55] *Id* at 277.

us none of these members present a "close case." We therefore reject Appellant's third AOE.

**D. The military judge did not err by declining to provide Appellant's requested instruction on the lack of good military character evidence.**

"When deciding whether the military judge properly instructed a panel, this Court uses a de novo standard of review."[56] In reviewing a military judge's denial of a defense requested tailored instruction, we evaluate the ruling for an abuse of discretion.[57] For a tailored instruction to be required, we must determine: "(1) the requested instruction is correct; (2) the main instruction given does not substantially cover the requested material; and (3) the instruction is on such a vital point in the case that the failure to give it deprived [appellant] of a defense or seriously impaired its effective presentation."[58]

Appellant's requested instruction fails to meet these requirements. The military judge denied the instruction stating that she would instruct the members to only consider the evidence before them, that she believed the requested instruction would confuse the members, and that the instruction was not an exact statement of the law.

We agree with the military judge. The requested instruction was confusing and was already covered by the other instructions the military judge provided to the members. The military judge properly instructed the members to only consider the evidence before them. Nothing more was required.

**E. Appellant's sentence is appropriate.**

Because we have set aside Specification 2 of The Charge as an unreasonable multiplication of charges, we must now examine Appellant's sentence under Article 66. This Court may affirm only such findings of guilty and the sentence or, such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.[59] This requirement is "a sweeping [c]ongressional mandate to ensure a fair and just punishment for every accused."[60]

---

[56] *United States v. Bailey*, 77 M.J. 11, 14 (C.A.A.F. 2017) (internal citation omitted).

[57] *Id.*

[58] *United States v. Carruthers*, 64 M.J. 340, 346 (C.A.A.F. 2007) (cleaned up) (citing *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003) (internal citations omitted).

[59] *United States v. Alkazahg*, 81 M.J. 764, 784-85 (N-M Ct. Crim. App. 2021).

[60] *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (internal quotations and citations omitted).

As we noted in *Alkazahg*, the sentence in this case contains both a unitary sentence and a segmented sentence because Appellant elected to be sentenced by military judge alone. Here, the unitary sentence—the one adjudged for all offenses—includes a dishonorable discharge and reduction to paygrade E-1, while the segmented sentence—adjudged by specification—was for confinement for eight years for Specification 1, three years for Specification 2, and two years for Specification 3.

In determining whether we can re-assess the sentence, we consider the "illustrative but not dispositive" factors contained within the CAAF's decision in *United States v. Winkelmann*.[61] Those include: "(1) [d]ramatic changes in the penalty landscape and exposure … (2) [w]hether an appellant chose sentencing by members or a military judge alone … (3) [w]hether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; [and] (4) [w]hether the remaining offenses are of the type that judges of the courts of criminal appeals have the experience and familiarity with to reliably determine what sentence would have been imposed at trial."[62]

Here, we find that we can reliably reconsider Appellant's sentence based upon a review of the *Winkelmann* factors, particularly because while the penalty landscape has changed, the presence of a mandatory minimum for Specification 1 and the military judge's segmented confinement sentences leaves little doubt as to what the sentence would have been had Specification 2 been dismissed at the trial level.

Specification 1 of The Charge carried with it a mandatory dishonorable discharge, so we can reliably conclude that the part of Appellant's unitary sentence that includes a dishonorable discharge would have been adjudged at trial. Similarly, the reduction to paygrade E-1 is a sentence that we can reliably determine would have been imposed at trial for either of the two remaining specifications alone or together. With respect to Appellant's confinement, we can rely on the military judge's concurrent sentences in determining that Appellant's total confinement for eight years for specification one would have remained unchanged had specification two been dismissed prior to sentencing. We therefore determine that Appellant's combined sentence of confinement for eight years, reduction to paygrade E-1, and a dishonorable discharge is appropriate under the circumstances even with the dismissal of Specification 2.

---

[61] 73 M.J. 11 (C.A.A.F. 2013).

[62] *Id.* at 15-16.

## III. CONCLUSION

Specification 2 of The Charge is **DISMISSED**. After careful consideration of the record and briefs of appellate counsel, we have determined that the remaining findings and sentence as reassessed are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[63] The remaining findings and the sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[63] Articles 59 & 66, UCMJ.